2003-NMCA-138

80 P.3d 495

**Melissa HEYE, Plaintiff–Appellee,**

v.

**AMERICAN GOLF CORPORATION, INC., a foreign corporation, and George Brazil, an individual, Defendants–Appellants.**

**No. 22,920.**

Court of Appeals of New Mexico.

Sept. 30, 2003.

Christopher M. Moody, Whitney Warner, Moody & Warner, P.C., Albuquerque, for Appellee.

Martin R. Esquivel, Rosario D. Vega–Lynn, Narvaez Law Firm, P.A., Albuquerque, for Appellants.

## OPINION

CASTILLO, J.

{1} This case requires us to determine the validity of an arbitration agreement that binds only the employee to arbitration and that was signed by the employee after she was hired. Because we hold that the agreement to arbitrate is illusory in this case, we affirm the trial court's denial of the employer's motion to compel arbitration.

## I. BACKGROUND

{2} On or about March 10, 1999, Melissa Heye (Plaintiff) applied for a position in the pro shop at the Paradise Hills Golf Course, a club managed by American Golf Corporation, Inc. (AGC). She was hired several days later. On March 19, 1999, after Plaintiff was hired but before she began working on March 22, 1999, AGC gave Plaintiff a number of documents, including the Co–Worker Alliance Handbook (the handbook). Page 20 of the handbook contained information about AGC's arbitration policy; page 23 of the handbook included an acknowledgment form with a statement that the employee agrees "to be bound by the arbitration policy set forth on page 20 of this handbook." Plaintiff signed the form. She worked for AGC until January 24, 2000. Plaintiff then filed a charge of employment discrimination with the New Mexico Human Rights Division.

Thereafter, on September 15, 2000, she filed a complaint in district court against AGC and her immediate supervisor, George Brazil, (Defendants) alleging sexual discrimination and hostile work environment, sexual harassment, retaliation, retaliatory discharge, negligent supervision and retention, battery, and intentional infliction of emotional distress.

{3} Defendants moved to compel binding arbitration pursuant to the acknowledgment form Plaintiff signed. Plaintiff argued for denial of the motion on several grounds: (1) that the agreement was illusory and not supported by consideration; (2) that the alleged agreement is unconscionable because it fails to provide Plaintiff with a reasonable means to resolve her claims; and (3) even if the agreement were valid, its scope does not cover all of Plaintiff's claims. After a hearing on the merits, the trial court issued a letter ruling on April 14, 2001, granting Defendants' motion. That letter was not made part of the record. Shortly thereafter, Plaintiff filed a motion for reconsideration, citing "recently decided legal authority"—specifically, *Zamprelli v. American Golf Corp.*, No. CIV 00–181 BB/RLP (D. N.M. April 12, 2001), an unreported case in which United States District Judge Black denied AGC's motion to compel arbitration based on an identical agreement. At the September 12, 2001, motion hearing, Plaintiff raised a second case: *Dumais v. American Golf Corp.*, 150 F.Supp.2d 1182 (D.N.M.2001) [hereinafter *Dumais I* ], filed on June 14, 2001. In *Dumais I*, United States District Judge Vasquez denied AGC's motion to compel arbitration based on a similar agreement.[1] The trial court then entered an order granting Plaintiff's motion for reconsideration and denying Defendants' motion to compel arbitration. Here, AGC appeals the trial court's denial of its motion to compel arbitration.

## II. DISCUSSION

### A. Standard of Review

■ {4} We agree with the parties that the appropriate standard of review for a trial court's grant or denial of a motion to compel arbitration is de novo. *Dumais II,* 299 F.3d at 1218; *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 796 (10th Cir.1995); *Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 51, 131 N.M. 772, 42 P.3d 1221; *Casias v. Dairyland Ins. Co.,* 1999–NMCA–046, ¶ 13, 126 N.M. 772, 975 P.2d 385. We review the trial court's grant of Plaintiff's motion to reconsider for abuse of discretion. *Lewis v. Samson,* 2001–NMSC–035, ¶ 22, 131 N.M. 317, 35 P.3d 972.

### B. The Handbook and Arbitration Agreement

{5} There are two pages in the handbook that form the basis for the dispute as to whether a valid, enforceable arbitration agreement exists. Page 20 in the handbook discusses arbitration and states in pertinent part:

> I agree that any claim of unlawful harassment or discrimination or claims of wrongful discharge, arising out of my employment with AGC, including public policy claims, contract claims and claims involving any applicable Federal, State, or Local statute, ordinance or regulation relating to the termination of my employment, employment discrimination, harassment or retaliation, will be resolved exclusively by final and binding arbitration and not by court action. . . . I acknowledge that I am knowingly and voluntarily waiving my right to pursue such claims in court and instead will pursue them through arbitration. . . . This arbitration shall be the exclusive means of resolving any dispute(s) listed in this agreement and no other action will be brought in any court or administrative forum.

{6} We reproduce the text of the acknowledgment form on Page 23 in its entirety:

### Acknowledgment

My signature below indicates that I have read this AGC Co–Worker Alliance Agree-

---

1. The Tenth Circuit later affirmed Judge Vasquez's decision in *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir.2002) [hereinafter *Dumais II* ]. AGC appealed the decision in *Zamprelli,* but it was dismissed on jurisdictional grounds in early 2002.

ment and handbook and promise and agree to abide by its terms and conditions.

I further understand that the Company reserves the right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook—other than employment at-will provisions—as it deems appropriate.

I acknowledge that my employment is at-will, which means that either the Company or I have the absolute right to end the employment relationship at any time with or without notice or reason. I further understand that the president of American Golf Corporation is the only authorized representative of the Company who can modify this at-will employment relationship and the contents of this handbook, and that any such modifications must be made in writing.

I further acknowledge that I have read and agree to be bound by the arbitration policy set forth on page 20 of this handbook.

{7} Defendants contend that the terms of the agreement compel Plaintiff to arbitrate her claims. Since Defendants discuss both the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (2000), and the New Mexico Uniform Arbitration Act (NMUAA), NMSA 1978, §§ 44–7–1 to –22 (1971, repealed by NMSA 1978, §§ 44–7A–1 to –32 (2001)), in their motion to compel, we proceed under the assumption that they intend both acts to govern.

{8} We agree with Defendants that the federal and state acts portend a policy favoring the enforcement of arbitration agreements. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (stating that a primary purpose of the FAA was "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts"); *Santa Fe Techs., Inc.,* 2002–NMCA–030, ¶ 51, 131 N.M. 772, 42 P.3d 1221 (reiterating that arbitration is "highly favored in New Mexico" and, under the NMUAA, "when parties have agreed to arbitrate, the courts must compel arbitration"). However, under either the FAA or the

NMUAA, a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (stating that the presumption in favor of arbitrability is reversed when there is a dispute as to the existence of an agreement); *Dumais II,* 299 F.3d at 1220 ("The presumption in favor of arbitration ... disappears when the parties dispute the existence of a valid arbitration agreement."); *Shaw v. Kuhnel & Assocs., Inc.,* 102 N.M. 607, 608, 698 P.2d 880, 881 (1985) ("[A]n arbitration clause is enforceable and valid *unless* there are legal or equitable grounds for revoking it.") *superseded by statute as stated in Aguilera v. Palm Harbor Homes, Inc.,* 2002–NMSC–029, ¶ 3 n. 1, 132 N.M. 715, 54 P.3d 993; *K.L. House Constr. Co. v. City of Albuquerque,* 91 N.M. 492, 494, 576 P.2d 752, 754 (1978) ("[T]he courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.").

{9} We interpret an arbitration agreement under the rules of state contract law. *First Options,* 514 U.S. at 944, 115 S.Ct. 1920; *Santa Fe Techs., Inc.,* 2002–NMCA–030, ¶ 52, 131 N.M. 772, 42 P.3d 1221; *Casias,* 1999–NMCA–046, ¶ 11, 126 N.M. 772, 975 P.2d 385. For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent. *Garcia v. Middle Rio Grande Conservancy Dist.,* 1996–NMSC–029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted); *Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 669, 857 P.2d 776, 780 (1993). Defendants assert that the arbitration agreement is supported by consideration in the form of AGC's agreement to arbitrate and in Plaintiff's employment or continued employment. Defendants further assert that the agreement is not unconscionable. We first look to AGC's agreement to arbitrate.

### C. AGC's Agreement to Arbitrate

{10} The trial court's order denying Defendants' motion to compel arbitration states

that it considered the briefs, supporting documentation, legal authority, and the oral arguments; we presume, therefore, that the trial court's decision was based at least in part on the newly decided cases presented by Plaintiff: *Zamprelli*, No. CIV 00–181 BB/RLP, and *Dumais I*, 150 F.Supp.2d 1182. In both cases, employees who signed agreements almost identical to that signed by Plaintiff brought suit against AGC, and AGC attempted to compel arbitration. In both cases, the federal courts concluded that AGC's promise to arbitrate was illusory because the arbitration agreement allowed AGC to unilaterally modify the agreement at any time. *Dumais I*, 150 F.Supp.2d at 1194; *Zamprelli*, No. CIV 00–181 BB/RLP, at 9–10.

{11} We observe that in *Dumais II*, the Tenth Circuit joined other circuits "in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Id.* at 1219 (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir.2000), *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999), and *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir. 1997)). We follow an analysis similar to that of the Tenth Circuit, which concluded that AGC's agreement to arbitrate was ambiguous, should be construed against AGC, and was illusory in that it gave AGC the option of changing the arbitration provision at will. *Id.* at 1218–19.

{12} "A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration." *Bd. of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct.App.1994). Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do. Restatement (Second) of Contracts §§ 73, 74, at 179, 185 (1981). Furthermore, a promise must be binding. When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration. *Lukoski v.*

*Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666–67, 748 P.2d 507, 509–10 (1988) (confirming that if an employer issues a policy statement in a manual, encourages reliance on the policy, and then only selectively abides by it, the employer is making an illusory promise); *James Hamilton Constr. Co.*, 119 N.M. at 420, 891 P.2d at 561 ("A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration to support a contract."); Restatement § 77 cmt. a, at 195; 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts* § 5.28, at 142 (rev. ed.1995).

{13} AGC points to language on page 20 of the handbook, stating that arbitration is the "exclusive means of resolving any dispute(s)," and argues that this language does not allow AGC to modify or ignore the agreement to arbitrate. Plaintiff counters that the language on page 20 conflicts with that of the acknowledgment form on page 23; the language on page 23 provides "that the Company reserves the right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook—other than employment at-will provisions—as it deems appropriate." As a result, Plaintiff contends, AGC is "free to amend, supplement, rescind or revise the policy regarding arbitration at its whim." Plaintiff concludes that "[a]t best, [AGC] is left with conflicting, and therefore ambiguous, terms regarding its ability to unilaterally change the contract."

{14} We construe the language of the entire contract as a whole. *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999–NMSC–006, ¶ 27, 127 N.M. 1, 976 P.2d 1. A contract is ambiguous if separate sections appear to conflict with one another or when the language is reasonably and fairly susceptible of more than one meaning. *Id.; Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 19, 123 N.M. 752, 945 P.2d 970; *Mark V. Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). We conclude that the conflicting terms of the arbitration agreement render it ambiguous. We construe ambiguities in a contract against the drafter to protect the rights of the party who did not

draft it. *W. Farm Bureau Ins. Co. v. Carter*, 1999–NMSC–012, ¶ 4, 127 N.M. 186, 979 P.2d 231; *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992); *Public Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001–NMCA–082, ¶ 19, 131 N.M. 100, 33 P.3d 651.

{15} The contract at issue in this case is a preprinted form contract. We think it fair to assume it was drafted by AGC; there is no suggestion that AGC sought or received any input from Plaintiff in connection with the drafting of the language. Therefore, we construe the arbitration agreement against AGC as the drafter. We disagree with AGC that it was "equally obligated to ... arbitrate all claims." To the contrary, the agreement provided in effect that only one thing would remain unchangeable, namely, Plaintiff's at-will employment status. It expressly reserved for itself the "right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook—other than employment at-will provisions—as it deems appropriate." The agreement, in essence, gives AGC unfettered discretion to terminate arbitration at any time, while binding Plaintiff to arbitration. AGC remains free to selectively abide by its promise to arbitrate; the promise, therefore, is illusory. *See Lukoski*, 106 N.M. at 667, 748 P.2d at 510. Thus, AGC's promise to arbitrate does not provide the consideration necessary to enforce the arbitration agreement.

### D. Other Consideration

{16} AGC also argues that other consideration—specifically, Plaintiff's employment and continued employment—provides the necessary consideration to make the agreement enforceable. We disagree because we determine that there is no other consideration that can support the arbitration agreement. We find it unnecessary to resolve this issue because AGC's part of the arbitration promise is illusory.

### E. Motion to Reconsider

{17} Finally, Defendants argue that the trial court abused its discretion when granting the motion to reconsider.

"An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Plaintiff requested the trial court's reconsideration of the motion to compel because of newly decided case law on the validity of AGC's arbitration agreement. It is neither untenable nor unjustifiable for the trial court to grant Plaintiff's motion on that basis. Therefore, the trial court did not abuse its discretion.

### F. Issues Not Addressed

{18} Plaintiff urges this Court to apply the collateral estoppel doctrine and argues that the question of the validity of AGC's arbitration agreement was actually litigated and decided in *Zamprelli, Dumais I,* and *Dumais II* and that AGC had a full and fair opportunity to litigate the issue in the previous cases. We agree with Defendants that Plaintiff did not raise this argument below. We also recognize that, generally, an appellee may raise any ground for affirmance on appeal and need not preserve the issue. *State v. Todisco*, 2000–NMCA–064, ¶ 11, 129 N.M. 310, 6 P.3d 1032. However, because we affirm on the grounds discussed above, we need not address Plaintiff's collateral estoppel argument. Similarly, because we find the agreement unenforceable, Defendants' argument as to whether it is unconscionable need not be addressed.

### III. CONCLUSION

{19} For the above reasons, we affirm the trial court's denial of Defendants' motion to compel arbitration.

{20} **IT IS SO ORDERED.**

SUTIN and KENNEDY JJ., concur.