2006-NMCA-102

142 P.3d 34

**Phillip F. SISNEROS, Plaintiff–
Appellant,**

v.

**CITADEL BROADCASTING COMPANY,
d/b/a KKOB–FM, Defendant–
Appellee.**

No. 24,917.

Court of Appeals of New Mexico.

June 21, 2006.

Law Offices of Roger Moore, Roger Moore, Albuquerque, NM, for Appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Charles A. Armgardt, Jason T. Gaskill, Albuquerque, NM, for Appellee.

## OPINION

FRY, Judge.

{1} Plaintiff Phillip Sisneros appeals from the district court's order compelling arbitration and granting Defendant Citadel Broadcasting Company's motion for partial summary judgment. Plaintiff challenges the enforceability of an arbitration clause in a written employment agreement on grounds that it is illusory and the result of mutual mistake or misrepresentation. We reverse, holding that questions of material fact exist as to whether Citadel's alleged misrepresentations preclude arbitration. Because the issue may arise on remand, we address Plaintiff's claim that the arbitration agreement was illusory and conclude that, if the parties in fact agreed to arbitrate their disputes, their agreement was not illusory as a matter of law.

## I. BACKGROUND

{2} Plaintiff worked for Citadel as a radio personality for more than twenty years under a series of employment agreements. In September 2002, Plaintiff and Citadel entered into a written employment agreement for Plaintiff to provide radio broadcasting services for two years, with an additional one-year option. The employment agreement stated that Citadel could terminate Plaintiff's services at any time without cause, provided that Citadel either gave Plaintiff six months' notice of the termination or compensated Plaintiff with his regular salary for the following six months. The employment agreement also included an arbitration provision in paragraph 22. Titled "Resolving Disputes," paragraph 22 provided: "Employee and Employer agree to arbitrate disputes in accordance with, and to the extent provided in, the standard arbitration procedure set forth in the Company's employee handbook, a copy of which has been provided to Employee and may also be accessed by Employee through the Employer's network."

{3} Eight months before entering into the employment agreement, Plaintiff had signed a form acknowledging receipt of Citadel's employee handbook. The handbook sets forth a dispute resolution policy and procedure, stating:

> As a condition of employment with the Company, all employees and the Company agree to submit all disputes, including disputes that arise from employment with the Company, termination of employment with the Company, and any other statutory or legal claim between the employee and the Company, to arbitration in accordance with the *Arbitration Policy and Procedure* which is annexed to this Guide, and subject to the limitations contained therein.

Contained in a two-and-a-half page section, the arbitration policy and procedure provides that all disputes between an employee and Citadel shall be resolved by final and binding arbitration according to the provisions of the policy. It states that both employees and Citadel waive their rights to have disputes decided in court. The arbitration policy and procedure concludes with a clause entitled "Modification or Termination of Policy," which states:

> The Company reserves the right to terminate or amend this policy at any time, except that any termination or amendment will not apply to claims which accrued before the amendment or termination. Any such amendment or termination will be communicated to employees, but shall not be rendered ineffective on the ground that a particular employee did not, or contends he or she did not, receive the notice.

The form Sisneros signed, which acknowledged he received the handbook and the arbitration policy and procedure, repeated language from the handbook, stating that the handbook superseded all prior employee handbooks and that the information in the handbook may be changed at any time, without notice, at the discretion of Citadel. As with the handbook itself, the form empha-

sized that the handbook did not represent an employment contract, that employees of Citadel were "at-will" employees, and that this "at-will" employment would remain in effect throughout the employment relationship unless specifically modified by an express written employment agreement between the employee and the company.

{4} On January 7, 2003, Citadel terminated Plaintiff's employment without cause. In accordance with the employment agreement, Citadel paid Plaintiff his regular salary for six months following the notice of termination.

{5} Plaintiff filed a complaint for breach of employment contract, retaliatory discharge, breach of the covenant of good faith and fair dealing, and misuse of name and persona for commercial gain. Plaintiff's complaint included allegations that Citadel wrongfully terminated his employment contract. The complaint also alleged that Citadel breached a duty to engage in good faith and fair dealing during the negotiation and execution of the employment agreement. Plaintiff based this allegation on Citadel's failure to disclose anticipated changes in the program format before Plaintiff signed the employment agreement. Alternatively, Plaintiff alleged that the failure to disclose program changes was fraud in the inducement.

{6} Citadel filed a motion to compel arbitration and in the alternative to dismiss. Referring to paragraph 22 of the employment agreement, Citadel claimed the parties "expressly agreed in a written employment contract that any claims pertaining to [Plaintiff's] employment must be resolved through arbitration." In response, Plaintiff claimed that before the employment agreement was executed, the parties agreed that Plaintiff would not be required to arbitrate disputes. According to Plaintiff, Citadel agreed to remove a paragraph from the employment agreement that stated Plaintiff agreed to waive his right to litigate disputes in court. That provision, paragraph 26(h), read as follows:

> Employee further acknowledges and agrees that, by signing this Agreement, Employee is waiving Employee's right to a judicial determination on any disputes aris-

ing out of or in any way related to this Agreement, with the exception of a judicial order to compel arbitration or to enforce an arbitration award, or a dispute submitted to judicial proceedings at Employer's election as provided in Paragraph 22 of this Agreement.

Although this language was removed from the final employment agreement, paragraph 22 was not removed. Plaintiff claimed Citadel erred in failing to remove paragraph 22 before he signed the final employment agreement. In support, Plaintiff submitted his own affidavit, in which he claimed, based on his objection to paragraph 26(h), which was removed from the final agreement, that the parties understood that arbitration would not be required for the resolution of any disputes. In his response to the motion to compel arbitration, Plaintiff also appeared to argue that the employment agreement was not supported by consideration because Citadel could terminate Plaintiff's employment without cause, which in effect made him an at-will employee.

{7} Even though Plaintiff's claim of fraud in the inducement in the complaint related to allegations surrounding changes in the program format, and not negotiations about the arbitration clause, the district court entered an order stating that "[a] hearing upon the issue of [f]raudulent [i]nducement must be decided by this Court, via an evidentiary hearing, in order to determine any alleged agreement to arbitrate." For reasons that are unclear from the record, the court never held an evidentiary hearing. However, at two subsequent hearings, the parties' arguments on fraud in the inducement specifically related to the arbitration provision rather than to any other substantive provisions of the employment agreement.

{8} After conducting limited discovery, Citadel filed a motion for partial summary judgment against Plaintiff's claim that fraud in the inducement prohibited arbitration of the dispute. Citadel argued that the parties were compelled to arbitrate the dispute and that the district court was an improper forum. In response, Plaintiff filed a motion for partial summary judgment on the issue of compulsory arbitration. Again, Plaintiff pre-

sented an affidavit stating that he did not agree to compulsory arbitration at the time the employment agreement was executed.

{9} The district court granted Citadel's motion for partial summary judgment on Plaintiff's claim that the arbitration agreement was the result of fraud in the inducement. The district court also granted Citadel's motion to compel arbitration and denied Plaintiff's motion for partial summary judgment. The district court's order is a final order subject to immediate appeal. *Lyman v. Kern*, 2000–NMCA–013, ¶ 9, 128 N.M. 582, 995 P.2d 504 (explaining that an order compelling arbitration and divesting district court of "further power to address any of the issues of law or fact presented by the case" is a final order for purposes of appeal).

## II.  DISCUSSION

{10} As an initial matter, we address an issue of nomenclature. The parties and the district court referred to one of Plaintiff's challenges to arbitration as a claim of "fraud in the inducement," and in the preceding portion of this opinion we have retained that label. Plaintiff's assertions and evidence regarding this claim relate to alleged misrepresentations made by Citadel about the changes made to the employment agreement prior to its execution; however, Plaintiff's claim does not appear to be that Citadel's misrepresentations were necessarily fraudulent, as opposed to negligent. Therefore, in the remainder of this opinion, we refer to Plaintiff's claim as one of misrepresentation rather than fraud in the inducement. *See Restatement (Second) of Contracts* §§ 159–173 (1981) (hereinafter *Restatement* ) (outlining the rules applicable to misrepresentation preliminary to the making of a contract).

{11} Plaintiff argues that (1) mutual mistake or Citadel's misrepresentations invalidate the arbitration clause; and (2) even if the parties agreed to arbitrate, the agreement to arbitrate was illusory. We conclude that Plaintiff has raised sufficient factual disputes as to whether Citadel materially misrepresented the writing's content, thereby inducing Plaintiff to make the contract, and if so, whether Plaintiff's reliance on the misrepresentation was justified. *See Restatement*

ch. 7 at 425 (listing the elements that must be proved in order to void a contract on the ground of misrepresentation). Consequently, the summary judgment in favor of Citadel and the order to arbitration were erroneous. Plaintiff may not be forced to arbitrate unless and until the fact finder resolves these disputes. Because we conclude that factual issues on the question of misrepresentation preclude summary judgment, we need not address the claim of mutual mistake. We also address Plaintiff's claim that the agreement was illusory because the issue may come up on remand.

### A.  Standard of Review

{12} Plaintiff's arguments relate both to the order compelling arbitration and the order granting partial summary judgment to Citadel on the claim of fraud in the inducement. Thus, the standard of review is de novo. *Cal. Cas. Ins. Co. v. Garcia–Price*, 2003–NMCA–044, ¶ 6, 133 N.M. 439, 63 P.3d 1159. In addition,

> [w]e review de novo the grant of the motion to compel arbitration in the same manner we would review a grant of a summary judgment motion. We may reverse the order to compel arbitration if we determine that there are genuine issues of material fact as to whether an agreement to arbitrate exists.

*DeArmond v. Halliburton Energy Servs., Inc.*, 2003–NMCA–148, ¶ 4, 134 N.M. 630, 81 P.3d 573 (citations omitted). We construe reasonable inferences in the record in favor of the party opposing the motion. *See Rummel v. St. Paul Surplus Lines Ins. Co.*, 1997–NMSC–042, ¶ 9, 123 N.M. 767, 945 P.2d 985.

{13} "In determining which issues of fact are material facts for purposes of Rule 1–056(C) [NMRA], we look to the substantive law governing the dispute." *Farmington Police Officers Ass'n v. City of Farmington*, 2006–NMCA–077, ¶ 17, 139 N.M. 750, 137 P.3d 1204. The applicable substantive law provides that a valid agreement to arbitrate is a prerequisite to compelling arbitration. *Salazar v. Citadel Commc'ns Corp.*, 2004–NMSC–013, ¶ 8, 135 N.M. 447, 90 P.3d 466. It is for the trial court, and not the arbitra-

tor, to decide whether a valid agreement to arbitrate exists. *Shaw v. Kuhnel & Assocs., Inc.*, 102 N.M. 607, 609, 698 P.2d 880, 882 (1985), *superseded by statute on other grounds as stated in Aguilera v. Palm Harbor Homes, Inc.*, 2002–NMSC–029, ¶ 3 n. 1, 132 N.M. 715, 54 P.3d 993. "[A]rbitration clauses are governed by contract law." *Santa Fe Technologies., Inc. v. Argus Networks, Inc.*, 2002–NMCA–030, ¶ 52, 131 N.M. 772, 42 P.3d 1221; *see also DeArmond*, 2003–NMCA–148, ¶ 9, 134 N.M. 630, 81 P.3d 573 (stating that "[w]hether a valid contract to arbitrate exists is a question of state contract law").

## B. Misrepresentation

{14} Plaintiff contends that the parties expressly agreed they would not be compelled to arbitrate their disputes. He claims that even though paragraph 22 of the employment agreement sets forth an agreement to arbitrate, this paragraph does not reflect the understanding of the parties before they entered into the agreement.

{15} Plaintiff claims the parties agreed that language referring to compulsory arbitration would be removed from the final employment agreement. To support this claim before the district court, Plaintiff submitted two affidavits stating that (1) during negotiations over the employment agreement, Plaintiff objected to the draft agreement's paragraph 26(h), which waived his right to litigate in court any disputes arising out of the agreement, and told Citadel's representatives that compulsory arbitration would be a "deal breaker"; (2) Citadel agreed to remove all language referring to compulsory arbitration; (3) Citadel's representatives provided Plaintiff with a revised employment agreement and told him that the compulsory arbitration requirement had been removed; and (4) based on these representations and his review of paragraph 26(h) of the revised agreement, which no longer required compulsory arbitration, Plaintiff agreed to the revised agreement. Based on these affidavits, Plaintiff argues that the evidence was insufficient that the parties intended to enter into an arbitration agreement or, in the alternative, the contract was ambiguous on the subject.

He contends that Citadel misrepresented its agreement to remove the arbitration requirement in order to induce him to sign the contract.

{16} Citadel counters that paragraph 22 remained part of the final agreement and clearly set forth an agreement to arbitrate according to the standard arbitration procedures in the handbook. Citadel claims that (1) evidence extrinsic to the employment agreement is not admissible to establish any understandings reached before the parties signed the agreement; (2) Plaintiff had a duty to ascertain the contents of what he was signing and cannot now object to the writing that he signed; (3) Plaintiff failed to establish an element of his claim, which is that Citadel intentionally deceived Plaintiff; and (4) even if a misrepresentation induced Plaintiff to sign the agreement, Plaintiff affirmed or ratified the agreement by accepting six months of paychecks after he was terminated, as provided in the agreement. We address each of Citadel's arguments in turn.

### 1. Extrinsic Evidence

{17} Citadel contends that "evidence outside of the 'four corners' of a written contract . . . is *only* admissible at this stage to show the language actually used by the parties in a contract is ambiguous." Therefore, Citadel continues, Plaintiff cannot rely on evidence of what occurred prior to the signing of the agreement in order to support his claim that Citadel misrepresented the substance of the agreement. We do not agree. "Extrinsic evidence is admissible to establish that the [contract] did not express the true agreement of the parties, even if the inconsistency cannot be detected on the face of the [contract] and becomes clear only in light of surrounding circumstances." *Twin Forks Ranch, Inc. v. Brooks*, 120 N.M. 832, 835, 907 P.2d 1013, 1016 (Ct.App.1995). If Citadel's argument were correct, it would be virtually impossible to show mistake or misrepresentation in the contract context.

### 2. Duty to Read Before Signing

{18} It is the general rule that a person has a duty to read a contract and familiarize himself with its contents, *see Bal-*

*lard v. Chavez,* 117 N.M. 1, 3, 868 P.2d 646, 648 (1994), and Plaintiff does not contend that he had no opportunity to review the final version of the contract prior to signing it. However, this general rule is not absolute. In order to understand the limitations on the general rule, we first review the law regarding misrepresentation in the contract context.

{19} Misrepresentations by one party as to a writing can make a contract voidable by the other party. *See Restatement* § 164 (describing the circumstances under which a misrepresentation makes a contract voidable). In order for this to occur, the recipient of the misrepresentation must show that (1) there was a misrepresentation that was (2) material or fraudulent and which (3) induced the recipient to enter into the agreement, and that (4) the recipient's reliance on the misrepresentation was justified. *See Robison v. Katz,* 94 N.M. 314, 319, 610 P.2d 201, 206 (Ct.App.1980) (stating that rescission of a contract "should be granted a party who, in entering a contract, justifiably relied on a misrepresentation of a material fact"); *Restatement* ch. 7 at 425 (listing similar elements to support voiding a contract). Citadel's argument regarding Plaintiff's duty to read the agreement involves the first and third elements—whether there was a misrepresentation and if so, whether Plaintiff justifiably relied on it.

{20} "A misrepresentation is an assertion that is not in accord with the facts." *Id.* at 424. A misrepresentation includes the situation where one party knows that the other party is mistaken as to the content of a writing and yet fails to correct this mistake. *Id.* § 161 cmt. e (stating that a party is expected to correct the mistaken understanding of the other party as to the contents of a writing); *Chromo Mountain Ranch P'ship v. Gonzales,* 101 N.M. 298, 299, 681 P.2d 724, 725 (1984); *see also* I E. Allan Farnsworth, *Farnsworth on Contracts* § 4.11 (3d ed.2004) (explaining that a misrepresentation can include a false representation "as to the contents or legal effect of a writing that is to evidence or embody the contract"). Plaintiff's affidavits about the pre-contract negotiations reasonably give rise to an inference that Citadel knew Plaintiff was unwilling to agree to compulsory arbitration and told Plaintiff the employment agreement had been changed to remove the arbitration provision even though the stated change had not been made. It is for the fact finder to determine whether to accept or reject this inference after considering all the evidence.

{21} As for whether Plaintiff was justified in relying on Citadel's statements, a contract may be voidable even when a party fails to use care in reading the writing and thus does not discover the mistake, depending on the circumstances. *Restatement* § 161 cmt. e; *see also Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,* 584 So.2d 1254, 1259 (Miss.1991) (stating that "[w]here one party's false representations induce another party to contract, negligence of the second party cannot be raised to bar relief to him"). "A recipient's fault in not knowing or discovering the facts before making the contract does not make his reliance unjustified unless it amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Restatement* § 172. Our Supreme Court, in a case involving mutual mistake, recognized this notion that failure to read a writing does not necessarily bar a contracting party from a remedy. *Ballard,* 117 N.M. at 3, 868 P.2d at 648 ("[A] mutual mistake ... can be subject to reformation ... despite the fact that each party to a contract has a duty to read and familiarize himself with the contents of the contract.").

{22} The *Restatement's* discussion of misrepresentation and fault contains an illustration closely tracking Plaintiff's allegations:

A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. A prepares a writing containing essential terms different from those agreed upon and induces B to sign it by telling him that it contains the agreed terms and that it is not necessary for him to read it. [B's] ... reliance is justified since his fault does not amount to a failure to act in good faith ... [or] fair dealing. The contract is voidable by B. In the alternative he may have the writing reformed.

§ 172 cmt. a, illus. 1. The evaluation of fault and the recipient's failure to discover a mistake in the writing is fact-specific and includes consideration of the conduct of both parties. The inquiry includes a consideration of the recipient's "peculiar qualities and characteristics" and whether he knew the representation was false. *Id.* § 172 cmt. b.

{23} Thus, contrary to Citadel's argument, the existence of Plaintiff's duty to read the agreement before signing it does not end the inquiry. Plaintiff has produced evidence giving rise to factual inferences that could reasonably support the determination that his failure to read the agreement was justified by Citadel's conduct. It was improper for the district court to resolve these factual issues by entering summary judgment.

### 3. Intentional Fraud

{24} Citadel argues that Plaintiff must prove that Citadel intentionally deceived Plaintiff to survive summary judgment. We are not persuaded. As we have already noted, Plaintiff does not appear to claim that Citadel's misrepresentations were fraudulent. In addition, our case law makes it clear that a misrepresentation can result in the voiding or rescission of a contract "irrespective of the good or bad faith of the party making the misrepresentation." *Robison,* 94 N.M. at 319, 610 P.2d at 206; *see also Maxey v. Quintana,* 84 N.M. 38, 41, 499 P.2d 356, 359 (Ct.App.1972) ("Rescission may be effected without regard to the good faith with which a misrepresentation is made."). The *Restatement* explains that the recipient of a misrepresentation may void the contract regardless of whether the misrepresentation was intentionally made to mislead. *See* § 164(1) (stating that a contract is voidable "[i]f a party's manifestation of assent is induced by *either a fraudulent or a material misrepresentation* by the other party upon which the recipient is justified in relying" (emphasis added)); § 162 cmt. a (explaining that a fraudulent misrepresentation "must not only be consciously false but must also be intended to mislead another"). However, if a misrepresentation is non-fraudulent, the recipient is entitled to void the contract only if the misrepresentation is material. *Id.* cmt. c. Thus, the question for the fact finder in the present case, assuming Citadel made a misrepresentation, is whether the misrepresentation was material, not whether it was intentional.

### 4. Ratification or Affirmation

{25} Citadel asserts that any purported misrepresentation on its part was cured as a matter of law under the doctrine of ratification or affirmation when Plaintiff accepted six post-termination payments. We respond to this argument because it is unclear whether, in compelling arbitration and granting partial summary judgment to Citadel, the district court concluded that there was no misrepresentation or that any misrepresentation was cured by later ratification.

{26} As we have held, the agreement to arbitrate is potentially voidable by Plaintiff, depending on whose version of events is believed. A party may lose the power to avoid a voidable contract if he later ratifies it or fails to act in a manner consistent with repudiation of the agreement after learning of the misrepresentation. *See Armijo v. Nuchols,* 57 N.M. 30, 35, 253 P.2d 317, 320 (1953) (stating that "[t]he principle is well established that voidable contracts may be rescinded at the election of an injured party; but, if with full knowledge of facts entitling him to rescission, he ratifies the transaction, he is conclusively bound thereby"); *see also Stewart v. Lucero,* 1996–NMSC–027, ¶ 18, 121 N.M. 722, 918 P.2d 1 (discussing ratification). Whether a party has ratified a voidable contract is an issue of fact. *Romero v. Bank of the S.W.,* 2003–NMCA–124, ¶ 17, 135 N.M. 1, 83 P.3d 288.

{27} Citadel argues that Plaintiff's acceptance of payments bars him from voiding the contract, and in particular, Citadel asserts that Plaintiff accepted two payments after he was aware that Citadel was seeking to compel arbitration. Because it is unclear whether the district court found any ratification, and because we remand for further fact finding, we simply note that ratification is a question that also warrants further development and decision on remand.

### 5. Summary Judgment was Improper

{28} Plaintiff presented evidence giving rise to factual issues as to whether the parties agreed to removal of the agreement's compulsory arbitration provisions, and if so, whether Citadel misrepresented that it had done so. Depending on how those fact issues are resolved, there may be additional issues regarding whether Citadel's alleged misrepresentation was material, whether Plaintiff was justified in relying on the misrepresentation, and whether Plaintiff nonetheless ratified the agreement as written. Until these issues are determined, the district court cannot decide whether this case is subject to arbitration.

{29} In many cases like this, a trial court can determine whether the parties agreed to arbitration by reviewing affidavits and documentary evidence. However, we agree with the statement of the Supreme Court of California that "where—as is common with allegations of [misrepresentation] such as are made here—the enforceability of an arbitration clause may depend upon which of two sharply conflicting factual accounts is to be believed" the matter should be resolved by oral testimony before the fact finder. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1072 (1996). Here, the district court never heard testimony about the agreement to arbitrate, although depositions were taken of various parties who were involved in the negotiations and execution of the contract. Summary judgment was improper, and determination of whether there was an agreement to arbitrate depends on testimony and factual findings resolving the conflicting accounts. We therefore remand for the district court to evaluate the conflicting accounts and apply the referenced rules on misrepresentation. We express no opinion about the merits of these issues, but leave such evaluation of the facts to the district court.

### C. Illusory Arbitration Clause

{30} If the district court concludes on remand that the parties in fact agreed to arbitrate their disputes, there remains the question of whether the agreement was illusory, as Plaintiff contends. We therefore address Plaintiff's arguments on this issue.

{31} "A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration." *Talbott v. Roswell Hosp. Corp.*, 2005–NMCA–109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (internal quotation marks and citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Id.* (internal quotation marks and citation omitted). A promise that puts no constraints on what a party may do, and in reality promises nothing, is an illusory promise. *Id.* An illusory promise does not provide consideration to support a contract. *See Restatement* § 77 cmt. a ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise.").

{32} Plaintiff contends that this Court must find the arbitration agreement illusory under the holding of *Salazar*. In *Salazar*, the Supreme Court determined that a similar arbitration provision annexed to an employee handbook was illusory because the employer (which also happened to be Citadel) retained an unfettered right to unilaterally modify, supplement, or revoke any of the provisions of the employee handbook at any time. 2004–NMSC–013, ¶ 11, 135 N.M. 447, 90 P.3d 466. The Court stated that "[u]nder general New Mexico contract law, an agreement that is subject to unilateral modification or revocation is illusory and unenforceable." *Id.* ¶ 9. Because the employer did not exempt the arbitration provision from the "sweeping rule" that it could modify any part of the handbook, the Court concluded that the employer "intended to retain its authority to [unilaterally] modify the arbitration clause." *Id.* ¶ 12. As a result, the Court found the agreement to arbitrate, considered in the context of the employee handbook, illusory and unenforceable. *Id.* ¶ 11.

{33} At first, the similarities between the facts in this case and those in *Salazar* appear striking. In this case, Plaintiff's employment agreement provides only that the parties agree to arbitrate disputes "in accordance with, and to the extent provid-

ed in, the standard arbitration procedure set forth in the Company's employee handbook." Paragraph 22 cannot stand on its own because it refers to the handbook, which in turn refers to the arbitration policy and procedure. As a result, it is reasonable to conclude that the arbitration procedure set forth in the handbook is "annexed to" the employment agreement. *See id.* ¶ 10 (determining that an agreement to arbitrate was annexed to the handbook). However, this case may be distinguished from *Salazar* because the annexed arbitration policy and procedure in the present case restricted Citadel's right to terminate or amend the agreement to arbitrate. In the present case, the arbitration policy and procedure provided that "[Citadel] reserves the right to terminate or amend this policy at any time, *except that any termination or amendment will not apply to claims which accrued before the amendment or termination.*" (Emphasis added.) Thus, once an employee's claim accrues, Citadel is bound to its agreement to arbitrate the dispute. In *Salazar*, by contrast, the policy gave the employer an unrestricted right to amend or terminate its agreement to arbitrate disputes at any time. *Id.* ¶ 5.

{34} We fail to see how Citadel's agreement to arbitrate is illusory. To the contrary, by virtue of the language in the arbitration policy and procedure annexed to the employment agreement, Citadel gives up its right to change or terminate its agreement to arbitrate disputes upon accrual of an employee's claim. This constitutes consideration, which "consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Talbott*, 2005–NMCA–109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (internal quotation marks and citation omitted). When Plaintiff's claim accrued, that is, when Citadel terminated his employment, Citadel was bound to arbitrate the dispute, just as Plaintiff was bound. The parties had mutual obligations to arbitrate.

{35} The agreement in this case is also distinguishable from arbitration agreements we have held to be unenforceable in other employment cases. For example, in *Piano,* this Court determined that there was no consideration for an arbitration agreement that permitted the employer to change the agreement at any time. 2005–NMCA–018, ¶¶ 2, 14, 137 N.M. 57, 107 P.3d 11. Similarly, in *Heye,* 2003–NMCA–138, ¶¶ 5, 6, 15, 134 N.M. 558, 80 P.3d 495, we held there was no consideration for an arbitration agreement that gave the employer "unfettered discretion to terminate arbitration at any time, while binding [the p]laintiff to arbitration." *Id.* ¶ 15; *see also Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002) (holding an arbitration agreement in an at-will relationship was unenforceable because the employer retained the right to alter the agreement). Unlike the agreements in these cases, the agreement in the present case restricts Citadel's right to amend or terminate the arbitration agreement once an employee's claim against Citadel accrues. This is in no way illusory, and it is consideration for the arbitration agreement.

## III. CONCLUSION

{36} We reverse the district court's order compelling arbitration, the partial summary judgment entered against Plaintiff on his claim of fraud in the inducement, and the denial of Plaintiff's countermotion for partial summary judgment. We remand this case for proceedings consistent with this opinion.

{37} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and JONATHAN B. SUTIN, Judge.