This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37720**

**SALIM M. SYED,**

Plaintiff-Appellee,

v.

**PARAMOUNT PRINCE REHABILITATION, LP,**
**AMELIE HARRIS, and JANIS ALLEN,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

Harrison, Hart & Davis LLC
Frank T. Davis
Ramon A. Soto
Albuquerque, NM

for Appellee

Wiggins, Williams & Wiggins, P.C.
Lorna M. Wiggins
Patricia G. Williams
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**     Paramount Prince Rehabilitation, LP (Paramount), Amelie Harris, and Janis Allen (collectively, Defendants) appeal the district court's denial of Defendants' motion to compel arbitration. Defendants argue (1) Plaintiff Salim Syed did not demonstrate the arbitration agreement (the Agreement) is substantively unconscionable and thus

unenforceable, and (2) even if any portion of the Agreement is unenforceable, the valid portions of the Agreement should be enforced. We affirm.

**BACKGROUND**

**{2}**    Plaintiff signed the Agreement as part of his employment with Paramount. Plaintiff later filed a discrimination suit in district court arising from this employment. In response, Defendants moved to compel arbitration. After briefing and a hearing, the district court denied Defendants' motion to compel arbitration without issuing findings of fact or conclusions of law. However, in its oral ruling, the district concluded the Agreement was both substantively unconscionable and illusory, and that certain terms in the Agreement were ambiguous. Defendants appeal.

**DISCUSSION**

**I.    Standard of Review**

**{3}**    "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. "Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." *Id.* (internal quotation marks and citation omitted).

**II.    The District Court Did Not Err in Denying Defendants' Motion to Compel Arbitration**

**{4}**    Defendants argue the district court erred in denying their motion to compel arbitration. "When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement." *Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 14, 150 N.M. 669, 265 P.3d 720 (internal quotation marks and citation omitted). However, "New Mexico courts have clearly distinguished those situations where lack of agreement by the parties renders an arbitration clause unenforceable." *Id.* ¶ 15; *see also Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 8, 134 N.M. 558, 80 P.3d 495 (stating that a legally enforceable agreement to arbitrate is a prerequisite to arbitration and without such agreement, parties will not be forced to arbitrate). For this reason, "[t]he party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105, ¶ 3, 149 N.M. 287, 248 P.3d 329.

**A.    Defendants' Arguments**

**{5}**    In its oral ruling, the district court concluded the Agreement was illusory and substantively unconscionable. On appeal, Defendants' argument is premised largely on the doctrine of unconscionability. Defendants argue the Agreement is fundamentally fair and equitable and thus not substantively unconscionable. In support of their argument

that the Agreement is not substantively unconscionable, Defendants contend Paramount did not retain unfettered discretion to modify the Agreement, and thus the Agreement is not illusory. We note, however, that

> consideration and unconscionability are two different analyses under contract law. Consideration is a prerequisite to the legal formation of a valid contract. Unconscionability, on the other hand, is an *equitable* doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party. . . . Unconscionability is examined by the court where, in spite of adequate consideration to support a contract, the unfair terms of the contract do not warrant enforcement.

*Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶¶ 17-18, 306 P.3d 480 (internal quotation marks and citations omitted). "An illusory promise does not provide consideration to support a contract." *Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 31, 140 N.M. 266, 142 P.3d 34. "A party's promise to arbitrate is . . . illusory where it retains the ability to unilaterally change the arbitration agreement." *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 29, 303 P.3d 814.

**{6}**     Defendants' argument that they did not retain unfettered discretion to modify the Agreement, and therefore that their promise to arbitrate is not illusory, goes to whether the Agreement was supported by consideration—and thus whether a valid contract was formed.[1] We conclude Defendants' promise to arbitrate was illusory and therefore the Agreement fails for lack of consideration.

## B.     The Agreement Is Not Supported by Consideration

**{7}**     Defendants argue Paramount did not retain the right to unilaterally amend the Agreement based on language in Section 23 of the Agreement that provides, "[T]he parties and the arbitrator will utilize *the procedures and policy in effect at the time of the incident or event giving rise to the arbitration.*" (Emphasis added.) Defendants contend this language is distinguishable from the impermissible arbitration agreement language at issue in *Flemma*, and similar to the acceptable language at issue in *Sisneros*. *Compare Flemma*, 2013-NMSC-022 ¶¶ 23-27, 32-33 (concluding that language in an arbitration agreement allowing the employer to unilaterally modify or terminate the arbitration agreement *after* an employee's claim accrued but *before* arbitration proceedings were initiated rendered the agreement substantively unconscionable and illusory), *with Sisneros*, 2006-NMCA-102, ¶¶ 33-34 (concluding that language in an arbitration agreement restricting the employer's ability to change or terminate the agreement after accrual of an employee's claim did not render the agreement illusory). Like the language at issue in *Sisneros*, Defendants argue, Section 23 restricts

---

1Defendants contend Plaintiff does not dispute that a valid contract was formed. We disagree. Plaintiff argued the Agreement was illusory at the motion hearing below and maintains this argument on appeal.

Paramount's right to amend or terminate the Agreement "once the action that Plaintiff is challenging occurred."

**{8}** Although Defendants' argument on appeal focuses largely on distinguishing the language in Section 23 from the language that rendered the agreement in *Flemma* illusory, the district court concluded Defendants' promise to arbitrate was illusory apparently in part based on ambiguous language in Section 23—language which, the court noted, is construed against the drafter. *See San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-045, ¶ 8, 146 N.M. 106, 206 P.3d 1011 (recognizing that an oral ruling may be "instructive in determining the court's intent where an ambiguity exists in the court's decision" (internal quotation marks and citation omitted)). Defendants do not address the issue of ambiguity on appeal. As we discuss, in light of their failure to address how any ambiguity in the Agreement's language might have affected the district court's construction of the Agreement, we cannot say Defendants have clearly demonstrated that the district court erred in determining the Agreement was not supported by consideration. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred.").

**{9}** Though the parties do not address ambiguity on appeal, Plaintiff argued at the motion hearing that Section 23 is ambiguous, and the district court likewise concluded in its oral ruling that certain language within that section is ambiguous. Section 23, entitled "Modification," provides,

> This Agreement may not be changed in any substantive way without prior notice to the Employee. The Agreement may be changed from time to time in minor ways. The Facility will periodically inform the Employee of these administrative changes. When any significant changes are instituted, the Employee will receive notice by posting or in general employee communications or in some other way, but in all cases, modifications or amendments must be express, in writing, and communicated by an authorized Facility representative. Absent agreement to the contrary, the parties and the arbitrator will utilize the procedures and policy in effect at the time of the incident or event giving rise to the arbitration. To the extent there is any disagreement on whether any modifications or amendments to this Agreement apply to a specific arbitration, the arbitrator will be empowered to decide this issue.

**{10}** Plaintiff raised two ambiguities to the district court in Section 23, which the district court likewise discussed in its oral ruling: (1) the ambiguous meaning of "procedures and policy" in sentence five, and (2) the ambiguous requirement for giving notice to employees when the Agreement is changed. We conclude these ambiguities discussed by the district court, construed against Defendants, render Defendants' promise to arbitrate illusory.

**{11}** "Whether contractual terms are ambiguous is a question of law, subject to de novo review." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 9, 299 P.3d 844. A contract term is ambiguous if it is reasonably susceptible to more than one construction. *See Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 845 P.2d 1232. "[W]e strictly construe a contract against the party who drafted the contract in order to protect the rights of the party who did not draft it." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651.

**{12}** With regard to Section 23's use of "procedures and policy," we conclude this phrase renders the Agreement reasonably susceptible to more than one construction as to whether Paramount can modify the Agreement after "the incident or event giving rise to" Plaintiff's claim. As discussed, Section 23 provides details related to modifying the Agreement. Sentences one and two of Section 23 refer changes to the "Agreement" and indicate the Agreement may be changed. These sentences provide no limitation on *when* the Agreement can be changed. Sentence five, however, states that "the parties and the arbitrator will utilize the *procedures and policy* in effect at the time of the incident or event giving rise to the arbitration." (Emphasis added.)

**{13}** In light of Section 23's references to changes to the "Agreement" in sentences one and two, one reasonable construction of "procedures and policy" in sentence five is that the phrase refers to something other than the Agreement. This construction is supported by other provisions in the Agreement: Section one provides that "this Mutual Agreement to Arbitrate Claims" will be referred to as the "Agreement," and elsewhere in the Agreement the use of "policy" or "procedure" apparently refers to general company policies and procedures rather than specifically to the company's arbitration policy or procedures. *See Heye*, 2003-NMCA-138, ¶ 14 ("We construe the language of the entire contract as a whole."). In a different section of the Agreement, "procedures" refers narrowly to prehearing procedures.

**{14}** Another reasonable construction, however, is that "procedures and policy" as used in Section 23 refers to any version of the Agreement resulting from modifications made *after* the employee's signing. In other words, "procedures and policy" could refer to Paramount's *arbitration* procedures and policy, which may change, according to sentences one and two of Section 23, after the employee signs the Agreement. Under this construction, any changes to the Agreement made *after* the incident or event giving rise to Plaintiff's claim would not apply in the arbitration. Instead, the version of the Agreement in effect at the time of the incident or event giving rise to Plaintiff's claim would be utilized. Because "procedures and policy" is reasonably susceptible to more than one construction, we conclude the term is ambiguous.

**{15}** Having concluded an ambiguity exists, "we strictly construe [the] contract against the party who drafted the contract in order to protect the rights of the party who did not draft it." *Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19. Here, there is no suggestion Paramount sought or received any input from Plaintiff in connection with the drafting of the language, and Paramount acknowledges that Plaintiff did not ask Paramount to negotiate the Agreement. Therefore, we construe the arbitration agreement against

Paramount. *See id.* Accordingly, we construe "procedures and policy" in Section 23 to refer to something other than the Agreement. *Gardner-Zemke Co. v. State*, 1990-NMSC-034, ¶ 18, 109 N.M. 729, 790 P.2d 1010 (stating that the drafter "bears the burden to use language conveying its intent"). As a result, Section 23's statement that "the parties and the arbitrator will utilize the *procedures and policy* in effect at the time of the incident or event giving rise to the arbitration" does *not* prohibit Paramount from utilizing a version of the *Agreement* amended after the incident or event giving rise to Plaintiff's claim. (Emphasis added.) Instead, sentences one and two of Section 23—which state the Agreement can be changed but provide no limitation on *when* the Agreement can be changed—indicate that Paramount could utilize a version of the Agreement modified after the incident or event giving rise to Plaintiff's claim. The Agreement thus allows Paramount to unilaterally amend it after an employee's claim has accrued, which means that the Agreement fails for lack of consideration. *See Flemma*, 2013-NMSC-022, ¶ 26 (concluding that an arbitration agreement failed for lack of consideration because the employer retained the right to unilaterally amend the agreement's terms after an employee's claim had accrued); *Heye*, 2003-NMCA-138, ¶¶ 13-15 (concluding that conflicting terms as to whether the employer could amend or rescind the arbitration agreement at any time rendered the agreement ambiguous and, construing the ambiguity against the employer, determining that the agreement gave the employer unfettered discretion to terminate arbitration at any time and therefore failed for lack of consideration).

**{16}** As to the other basis for its oral ruling that there was ambiguity, the district court discussed Section 23's ambiguous notice requirement. Again, Section 23 provides,

> This Agreement *may not be changed in any substantive way without prior notice* to the Employee. *The Agreement may be changed from time to time in minor ways.* The Facility will periodically inform the Employee of these administrative changes. When any significant changes are instituted, the Employee will receive notice by posting or in general employee communications or in some other way, but in all cases, modifications or amendments must be express, in writing, and communicated by an authorized Facility representative.

(Emphases added.)

**{17}** The district court stated that Section 23's use of the terms "substantive" and "minor" was vague and ambiguous, reasoning that, although notice was required before "substantive" changes were made to the Agreement, Section 23 did not require notifying employees about "minor" changes. The district court stated it was unclear what constituted a minor versus substantive change and concluded Paramount had the unilateral power to make certain changes to the Agreement without notifying the employee.

**{18}** We agree that the words "substantive" and "minor"—which the Agreement does not define—are vague and therefore ambiguous. *See C.R. Anthony Co. v. Loretto Mall*

*Partners*, 1991-NMSC-070, ¶ 21, 112 N.M. 504, 817 P.2d 238 (noting that an ambiguity may exist when a term is "vague, uncertain, or reasonably susceptible to more than one interpretation"). We thus construe the ambiguity against Paramount. Under such a construction, Section 23 allows Paramount to change the Agreement in certain undefined ways without providing Plaintiff advance notice. *See Flemma*, 2013-NMSC-022, ¶ 33 (stating that an employer's promise to arbitrate was illusory in part because certain employees would not receive advance notice of changes to the arbitration agreement).

**{19}**    Even if we were to assume "minor" changes would not alter Paramount's promise to arbitrate, the Agreement is illusory in another regard. Section 23 does not require Paramount to seek Plaintiff's "approval before altering the terms of the . . . Agreement" in substantive and significant ways. *See Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 14, 137 N.M. 57, 107 P.3d 11. While Section 23 provides that such "modifications or amendments must be express, in writing, and communicated by an authorized Facility representative," this section is completely silent with respect to Plaintiff's signature or approval. *See id.* ¶¶ 12-13 (construing any ambiguity against the employer and concluding that an arbitration agreement that stated the agreement could not be changed unless in writing and signed by the owner of the company was "completely silent with respect to [the p]laintiff's signature or approval"). Construing any ambiguity against Paramount, the Agreement does not require Paramount to seek Plaintiff's approval before altering the terms of the Agreement; Paramount "remains free to selectively abide by its promise to arbitrate." *See id.* ¶ 14 (internal quotation marks and citation omitted). Paramount's "promise to arbitrate is [therefore] illusory and is not consideration for" Plaintiff's promise. *See id.*

**{20}**    Accordingly, in light of Sections 23's ambiguities, which the district court discussed in its oral ruling and which Defendants have not addressed on appeal—as well as Section 23's silence with respect to Plaintiff's approval following substantive changes to the Agreement—we conclude Defendants have not demonstrated that the district court erred in denying their motion to compel arbitration based on lack of consideration. *See Corona*, 2014-NMCA-071, ¶ 26 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred."). Because the agreement lacks consideration, we conclude a valid arbitration agreement was never formed, *see Figueroa*, 2013-NMCA-077, ¶ 17, and therefore decline Defendants' invitation to selectively enforce "[v]alid [p]ortions" of the Agreement. *See Piano*, 2005-NMCA-018, ¶ 15 (concluding that a valid contract was never formed and therefore declining the defendant's invitation to rewrite the arbitration agreement such that it was supported by consideration). Given our conclusion that the Agreement is not valid, we need not reach Defendants' remaining arguments addressing arbitrability and unconscionability. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

**CONCLUSION**

**{21}** For the foregoing reasons, we affirm the district court's denial of Defendants' motion to compel arbitration.

**{22}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**JANE B. YOHALEM, Judge**