144 P.3d 111 (2006)
2006-NMCA-127
J. Casper HEIMANN, Pecos Slope Royalty Trust and Rio Petro Ltd., individually and on behalf of all other private royalty and overriding royalty owners in the Bravo Dome Carbon Dioxide Unit, New Mexico similarly situated, Plaintiffs-Appellees,
v.
KINDER-MORGAN CO2 COMPANY, L.P., Defendant-Appellant.
No. 25,735.
Court of Appeals of New Mexico.
August 8, 2006.
Certiorari Granted October 11, 2006.
*113 Gallegos Law Firm, P.C., J.E. Gallegos, Michael J. Condon, Santa Fe, NM, Susman Godfrey, LLC, Thomas W. Paterson, Shawn Raymond, Houston, TX, for Appellees.
Long, Pound & Komer, P.A., John B. Pound, Santa Fe, NM, Vinson & Elkins L.L.P., Guy S. Lipe, Andrew McCollam, III, Richard H. Page, Houston, TX, for Appellant.
Certiorari Granted, No. 29,990, October 11, 2006.

OPINION
WECHSLER, Judge.
{1} In this case we determine the scope of an arbitration clause contained in a 1998 settlement agreement between Plaintiffs, a class of carbon dioxide royalty owners, and Defendant, Kinder Morgan CO2 Company, L.P., a working interest owner. Kinder Morgan appeals a district court order denying its motion to compel arbitration. We entertain this appeal pursuant to NMSA 1978, § 44-7-19(A)(1) (1971) (repealed 2001) (current version at NMSA 1978, § 44-7A-29(a)(1) (2001)), and we affirm.
BACKGROUND
{2} Plaintiffs own royalties in the Bravo Dome Carbon Dioxide Unit, a carbon dioxide producing unit in northeastern New Mexico, based on their fee ownership of the land. Carbon dioxide is transported by Kinder Morgan from the Unit to oil fields, where it is used to aid in the production of oil. Kinder Morgan uses some of the carbon dioxide it produces at the Unit in its own oil operations and sells the rest to other oil companies. It pays royalties to Plaintiffs based on the sales for the carbon dioxide it produces at the Unit.
{3} In 1995, Plaintiffs filed a lawsuit against the Unit's carbon dioxide producers, including Shell Western E & P Inc. and Shell CO2 Company, Kinder Morgan's predecessors-in-interest, for royalties they claimed had been underpaid. Plaintiffs and Shell settled the lawsuit in 1998. Plaintiffs filed this lawsuit against Kinder Morgan in August 2004, claiming violations of the Unfair Practices Act, constructive fraud, breach of the settlement agreement, breach of the implied covenant of good faith, breach of a covenant to market, and unjust enrichment, and requesting an accounting, injunctive relief, compensatory and punitive damages, interest, and attorney fees and costs. In its answer and a subsequent motion to compel arbitration, Kinder Morgan argued that each of these claims was subject to an arbitration clause contained in the 1998 settlement agreement. The parties agree that the arbitration clause is valid, but dispute its proper scope.
{4} The 1998 settlement agreement contained numerous provisions governing the method by which future royalties would be calculated. It provided that Shell would pay royalties based on "the volume weighted average of the prices for [its] sales or other dispositions of Unit CO2 that [it] separately dispose[s] of or take[s] in kind." This volume weighted average would be calculated "utilizing a net-back methodology to adjust [Shell's] prices for sales or other dispositions occurring downstream of the Unit Tailgate, and utilizing the prices or values established in [its] Qualified Contracts . . ., [its] transportation charges established as Qualified Other Transportation Charges . . ., and [its] Approved Mainline Deductions." The settlement agreement further provided that other methodology might be used:
Nothing herein is intended to suggest that other benchmarks that may be utilized in the future to determine royalty settlement values that are not characterized as qualified or approved herein, or that future royalty payments resulting from the use of such benchmarks, are improper. [Shell], on the one hand, and Plaintiffs and members of the Class, on the other, intend, only, to omit any agreement concerning whether or not such future benchmarks, and resulting future royalty payments, are or are not proper.
{5} The arbitration clause in the settlement agreement applies to disputes involving non-qualified contracts and non-qualified transportation charges. "Non-qualified" contracts and charges, as defined by the settlement agreement, are new contracts or arrangements not pre-approved by the royalty owners. The arbitration clause states:

*114 Any claims asserted by Plaintiffs or members of the Class against . . . Shell regarding (a) the price or value under Non-Qualified Contracts . . . utilized by . . . Shell in establishing royalty settlement values for purposes of payment to their Respective Owners and, (b) regarding Non-Qualified Other Transportation Charges . . . utilized by . . . Shell in establishing royalty settlement values for purposes of payment to their Respective Owners, shall be submitted to and decided by binding arbitration. . . . This provision concerning arbitration applies only to the claims identified in this paragraph . . . and shall, in no event, apply to any future claims for breach of this Agreement.
{6} Kinder Morgan filed a motion to compel arbitration on each issue in this case. At a hearing on February 24, 2005, the district court ruled that the claims alleged involved breach of contract and were therefore not subject to the arbitration clause. It entered an order denying Kinder Morgan's motion in March 2005.
ARGUMENTS ON APPEAL
{7} Kinder Morgan argues that the district court erred in denying its motion to compel arbitration. Because Plaintiffs contend that Kinder Morgan modified the parties' agreed-on methodology for calculating future royalties, by using non-qualified contracts in the royalty calculations and by failing to disclose that use to Plaintiffs, Kinder Morgan argues that underlying Plaintiffs' claims is the contention that the price of non-qualified contracts was improper. Thus, according to Kinder Morgan, all of Plaintiffs' claims are subject to arbitration. Although the complaint is largely couched in terms of breach of contract, it also contains language that Kinder Morgan argues shows that the claims fall within the scope of the arbitration clause, such as the following:
10. . . . The defendant has engaged in across the board methods of fabricating prices and fixing self serving false values for the Unit CO2. . . .
. . . .
25. . . . Small quantities of the CO2 from the Unit are some times [sic] the subject of pretextual "bid" arrangements resulting in a sales contract reciting a "price" per Mcf of CO2 delivered at a Permian Basin oil field. Some Unit working interest owners have cited such "prices" as a basis for valuing CO2 produced at the Unit. . . .
. . . .
43. Kinder-Morgan has for the material time uniformally [sic] set "prices" that are not formed by true market forces, are grossly less than the value relative to the oil and other hydrocarbons that but for the CO2 would not be recovered and are fixed by the defendant to serve its objectives of (a) reducing expense and (b) maximizing its profit. . . .
Kinder Morgan correctly notes that ambiguity in arbitration clauses should be resolved to favor arbitration. E.g., DeArmond v. Halliburton Energy Servs., Inc., 2003-NMCA-148, ¶ 7, 134 N.M. 630, 81 P.3d 573.
{8} Plaintiffs argue that in order to invoke the arbitration clause, Kinder Morgan must give prior notice of its intention to use non-qualified contracts in its royalty calculation. Their contention is that once notice had been given, and royalty owners had objected, Kinder Morgan could then have invoked the arbitration clause. Plaintiffs also argue that the use of non-qualified contracts in calculating royalty payments is in itself a breach of the settlement agreement that would fit within the explicit exception to the arbitration clause for claims for breach of the settlement agreement. Thus, they argue, none of their claims is subject to arbitration. Finally, Plaintiffs note that the arbitration clause is narrow and should not be bound by the general policy in favor of arbitrability. See, e.g., New York v. Oneida Indian Nation of N.Y., 90 F.3d 58, 61-63 (2d Cir.1996).
STANDARD OF REVIEW
{9} We review de novo the district court's denial of Kinder Morgan's arbitration demand. Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 4, 137 N.M. 57, 107 P.3d 11. Interpretation of the arbitration clause in the settlement agreement is also a question of law subject to de novo review. W. Farm Bureau Ins. Co. v. Carter, 1999-NMSC-012, ¶ 4, 127 N.M. 186, 979 P.2d 231.
*115 ARBITRATION
{10} We first address the parties' claims and note that both seem to have taken somewhat unreasonable positions. On the one hand, Kinder Morgan's position would require arbitration of all claims that involve non-qualified contracts or transportation charges. Its interpretation of the arbitration agreement would leave essentially no viable claims that would not be subject to arbitration, despite the fact that the arbitration clause is narrow and explicitly excludes claims for breach of the settlement agreement. On the other hand, Plaintiffs' position allows arbitration only when Kinder Morgan has followed specific procedures that do not appear within the settlement agreement. We will not read language into a contract that is not there, but neither will we construe any clause so as to render it meaningless. See Pub. Serv. Co. of N.M. v. Diamond D Constr. Co., 2001-NMCA-082, ¶ 31, 131 N.M. 100, 33 P.3d 651; cf. Twin Forks Ranch, Inc. v. Brooks, 1998-NMCA-129, ¶ 20, 125 N.M. 674, 964 P.2d 838 (noting that courts cannot reform a contract to add terms not agreed upon by the parties). We accordingly reject both parties' positions.
{11} The parties agree that we ought not look beyond the language of the complaint to determine whether Plaintiffs' claims are subject to arbitration. However, both parties present arguments on appeal that are based on statements made subsequent to the filing of the complaint. We reach the same conclusion regardless of whether we consider these statements.
{12} Despite Kinder Morgan's suggestion that the claim for breach of the settlement agreement is not legitimate, we will not consider the validity of claims stated.
[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the . . . claim . . . is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."
AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649-50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citation omitted). Thus, we decline to express any opinion as to the merits of Plaintiffs' claims as stated. This issue is not before us.
{13} Both the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2000), and the New Mexico Uniform Arbitration Act, NMSA 1978, §§ 44-7-1 to -22 (1971) (repealed 2001) (current version at NMSA 1978, §§ 44-7A-1 to -32 (2001)), express a strong presumption in favor of arbitrability. See, e.g., McMillan v. Allstate Indem. Co., 2004-NMSC-002, ¶ 9, 135 N.M. 17, 84 P.3d 65; Heye v. Am. Golf Corp., 2003-NMCA-138, ¶ 8, 134 N.M. 558, 80 P.3d 495. However, we agree with Plaintiffs that only matters falling under the scope of a narrow arbitration clause require arbitration. See McMillan, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65 ("[T]he arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters.") (internal quotation marks and citation omitted); cf. AT & T Techs., Inc., 475 U.S. at 650, 106 S.Ct. 1415 (noting that the presumption in favor of arbitration, the rule that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," is "particularly applicable" when the arbitration clause at issue is broad) (alteration in original) (internal quotation marks and citation omitted). The presumption does not operate to create a right to arbitrate claims the parties have not agreed to arbitrate. See Santa Fe Techs., Inc. v. Argus Networks, Inc., 2002-NMCA-030, ¶¶ 52-57, 131 N.M. 772, 42 P.3d 1221 (noting that "the court's inquiry is whether the parties have agreed to arbitrate the matter under dispute" and holding that the arbitration clause in that case, though *116 broad, was not broad enough to encompass the claim); see also AT & T Techs., Inc., 475 U.S. at 648-49, 106 S.Ct. 1415 ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). We "give effect to the intent of the parties, and when the terms of the agreement are clear and unambiguous, courts try to ascertain the intent of the parties from the ordinary meaning of the language in the agreement." Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. 690, 704, 858 P.2d 66, 80 (1993).
{14} Under the arbitration clause in this case, the parties agreed to submit to arbitration only those claims regarding the prices of non-qualified contracts and transportation charges. Language in the settlement agreement emphasizes the narrow scope of the arbitration clause: "This provision concerning arbitration applies only to the claims identified in this paragraph. . . ." It also provides an explicit exception for "any future claims for breach of this Agreement." "Courts must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement." McMillan, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65. We therefore turn first to the question of breach of the settlement agreement, because claims for breach are not subject to arbitration regardless of whether they may involve prices of non-qualified contracts. Then, we will discuss whether other claims in the complaint should be subject to the arbitration clause.
EXCEPTION FOR BREACH OF THE SETTLEMENT AGREEMENT
{15} Ordinarily we look to the facts alleged in a complaint to determine whether claims are subject to arbitration. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."). But when, as here, the arbitration clause has an explicit exception for certain types of claims, we must consider the causes of action Plaintiffs rely on. The settlement agreement states that no claims for breach of the settlement agreement are subject to arbitration, and we must examine the complaint to give effect to the intent of the parties. See Shaeffer v. Kelton, 95 N.M. 182, 185, 619 P.2d 1226, 1229 (1980) ("The primary objective in construing a contract is not to label it with specific definitions or to look at form above substance, but to ascertain and enforce the intent of the parties as shown by the contents of the instrument."). Claims for breach of contract are necessarily claims for breach of the settlement agreement, because that agreement is the only contract between the parties. We therefore examine the facts underlying each of Plaintiffs' claims to determine what claim, if any, they state, and whether that claim falls within the exception.
{16} Plaintiffs' first claim alleges violation of New Mexico's Unfair Practices Act. NMSA 1978, §§ 57-12-1 to -24 (1967, as amended through 2005). In order to state a claim for unconscionable trade practices, a plaintiff may allege that the defendant took advantage of the plaintiff's "lack of knowledge . . . to a grossly unfair degree" to the plaintiff's detriment, or that action of the defendant "result[ed] in a gross disparity between the value received by [the plaintiff] and the price paid." Section 57-12-2(E). Plaintiffs' complaint alleges that Kinder Morgan "has taken advantage of the lack of knowledge of the plaintiffs to a grossly unfair degree and paid the Royalty Interests in an amount grossly less than the proper and real value." Plaintiffs must also allege that this practice occurred "in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services." Id. As we have noted, the entire complaint arises from the lease and sale of carbon dioxide. Violation of the Act is not a breach of contract, as evidenced by Section 57-12-10(D), which provides for relief "in addition to remedies otherwise available." This claim does not, therefore, fit within the explicit exclusion for claims of breach of the settlement agreement.
*117 {17} Plaintiffs' complaint next alleges fraud. To state a claim for fraud, plaintiffs must allege
that a representation was made as a statement of fact which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that the other party did in fact rely on it and was induced thereby to act to his injury or damage.

Sauter v. St. Michael's Coll., 70 N.M. 380, 384-85, 374 P.2d 134, 138 (1962). Fraud may also be premised on an omission if there is a duty to disclose information, such as when the defendant has superior knowledge. Azar v. Prudential Ins. Co. of Am., 2003-NMCA-062, ¶ 60, 133 N.M. 669, 68 P.3d 909. Plaintiffs allege fraud by claiming that Kinder Morgan had "superior and important knowledge concerning the CO2 economics and uses available only to it," that Kinder Morgan failed to "disclose completely and truthfully all material facts," that Kinder Morgan did so intentionally, and that Kinder Morgan's failure to disclose "has proximately caused damages to the plaintiffs." Fraud is a tort, rather than a breach of contract, claim and is therefore potentially subject to the arbitration agreement. See Williams v. Stewart, 2005-NMCA-061, ¶ 36, 137 N.M. 420, 112 P.3d 281 (noting and distinguishing "breach of contract" and "the tort of fraud" as two separate causes of action).
{18} The complaint alleges "breach of contract and of the covenant of good faith and fair dealing" as its third claim. We turn to the facts alleged to determine whether this claim is actually for breach of the settlement agreement, and conclude that it is. The claim of breach of good faith and fair dealing sounds in contract, at least when no "special relationship" such as that between an insured and insurer exists. Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). This concept allows courts to award damages for breach of contract when one party prevents another from getting the benefits of a contractual arrangement. Id. at 438, 872 P.2d at 856. Plaintiffs' complaint alleges that Kinder Morgan interfered with their right to payment under the settlement agreement insofar as Kinder Morgan "intentionally to cause damage" calculated royalty payments using prices that are "not formed by true market forces." On appeal, Plaintiffs argue that the use of non-qualified contracts in itself constitutes a breach of the settlement agreement. We reiterate that it is not our task to decide the merits of this claim, but rather to determine whether it falls within the exception to the arbitration clause in the settlement agreement. As stated in the complaint and on appeal, Plaintiffs' third claim alleges breach of the settlement agreement. It, therefore, is not subject to arbitration.
{19} Plaintiffs' fourth claim is for breach of an implied covenant to market. Implied covenants are enforced by courts when "it is clear . . . from the relevant parts of the contract taken together and considered with the facts and circumstances surrounding the execution of the agreement, that the obligation in question was within the contemplation of the parties or was necessary to effect their intention." Cont'l Potash, Inc., 115 N.M. at 704, 858 P.2d at 80; see Darr v. Eldridge, 66 N.M. 260, 264, 346 P.2d 1041, 1044 (1959) (noting that "equity demands that the covenant to market be implied in oil and gas leases"). Plaintiffs allege that Kinder Morgan is subject to an implied covenant "to achieve the best price or value for CO2 produced from the Unit reasonably possible under the circumstances." They further allege that Kinder Morgan breached that covenant by failing to "derive the best prices reasonably available." Plaintiffs thus allege breach of the settlement agreement in their fourth claim. This claim, as stated in Plaintiffs' complaint, is not subject to arbitration.
{20} The fifth claim in Plaintiffs' complaint requests an accounting, an injunction, and damages for unjust enrichment. An accounting and an injunction are remedies only and do not constitute independent claims for the purpose of this analysis. Unjust enrichment, however, is a theory under which an aggrieved party may recover from another party who has profited at the expense of the aggrieved party. Ontiveros Insulation *118 Co. v. Sanchez, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695. In order to state a claim for unjust enrichment, the aggrieved party must allege "that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." Id. Plaintiffs in this case allege unjust enrichment by claiming that Kinder Morgan "has willfully and in violation of duties imposed by law and equity failed and continues to fail to fairly share the true economic benefit of the CO2 produced from the Unit." However, it is not clear whether a claim for unjust enrichment is a claim for breach of the settlement agreement that is excluded from the arbitration requirement. Our Supreme Court has said that "an action for unjust enrichment is not `based on contract' in a strict theoretical sense," but that it is sufficiently closely related to a contract claim that it ought to be subject to the same sovereign immunity requirements. Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 179, 793 P.2d 855, 861 (1990); see also Tom Growney Equip., Inc. v. Ansley, 119 N.M. 110, 112, 888 P.2d 992, 994 (Ct.App.1994) ("New Mexico has recognized a theory of quantum meruit distinct from contract."). We agree that unjust enrichment is much like a contract claim, but we decline to hold that it fits within the arbitration clause's exception because the settlement agreement is not clear on this point and we resolve ambiguity in favor of arbitration. See McMillan, 2004-NMSC-002, ¶ 9, 135 N.M. 17, 84 P.3d 65.
SCOPE OF THE ARBITRATION CLAUSE
{21} Because we conclude that Plaintiffs' claims for violation of the Unfair Practices Act, fraud, and unjust enrichment do not fit within the settlement agreement's exception to its arbitration clause, we must determine whether they are claims "regarding (a) the price or value under Non-Qualified Contracts . . . [or] (b) regarding Non-Qualified Other Transportation Charges." As we have noted, the arbitration provision in this case is narrow because it only applies to claims regarding non-qualified contract prices and transportation charges and "shall, in no event, apply to any future claims for breach of this Agreement." Because the clause is narrow, our usual presumption in favor of arbitration will not resolve the issue. Cf. Heye, 2003-NMCA-138, ¶ 8, 134 N.M. 558, 80 P.3d 495 (noting that the presumption in favor of arbitration does not apply when the parties dispute the validity of an agreement to arbitrate). We review the factual allegations underlying these claims, bearing in mind the clearly expressed intent of the parties in agreeing to arbitration. See Shaeffer, 95 N.M. at 185, 619 P.2d at 1229.
{22} First, we examine Plaintiffs' claim for violation of the Unfair Practices Act. The complaint alleges several facts relevant to this claim. Plaintiffs allege that Kinder Morgan "made false or misleading statements" and that those statements misled Plaintiffs as to "the value of Unit CO2." Plaintiffs further allege that Kinder Morgan paid them "an amount grossly less than the proper and real value." Kinder Morgan has argued that this claim is about prices under non-qualified contracts. It is true that one way Kinder Morgan could have paid Plaintiffs "less than the proper and real value" is by using the calculation method provided by the settlement agreement, but including improperly valued non-qualified contracts in the average. Plaintiffs do allege, for example, that Kinder Morgan engaged in "pretextual `bid' arrangements" that reduced the price paid under non-qualified contracts. However, Plaintiffs' allegations are very general. They indicate that the royalties they were paid were too low, but that they have limited information, including "a supposed per well production volume." This reference may indicate that Plaintiffs intend to prove that Kinder Morgan paid royalties that were too low not because it was using improperly valued non-qualified contracts, but rather, for example, because it deceived Plaintiffs about the amount of carbon dioxide produced. Plaintiffs' complaint simply does not make clear the facts they intend to prove at trial. We note that Plaintiffs' later statements also do not make clear the facts Plaintiffs intend to prove.
{23} Plaintiffs' second claim, for fraud, is likewise framed in general terms. *119 The complaint alleges that Kinder Morgan engaged in a "value reducing scheme" but does not make clear the nature of this "scheme" and does not state the facts Plaintiffs intend to prove at trial. We note, as did Kinder Morgan, that some language in the complaint seems to indicate that Plaintiffs have decided to challenge the prices under non-qualified contracts. But none of this language appears within the section of Plaintiffs' complaint that alleges fraud. And, as noted in the previous paragraph, some language in the general "facts" section of the complaint indicates that Plaintiffs may intend to prove other facts entirely. It is unclear which facts Plaintiffs allege in support of this theory and which facts Plaintiffs allege in support of their claims for breach of the settlement agreement because Plaintiffs have grouped most of their factual allegations together in their complaint.
{24} Finally, we examine Plaintiffs' claim for unjust enrichment. The complaint alleges that Kinder Morgan has been enriched by virtue of "devices and payment methods which have and do deprive plaintiffs and the class members of their proper . . . entitlement." Once again, Plaintiffs do not appear to be relying on the prices under non-qualified contracts. Instead, they seem to dispute the method as a whole by which Kinder Morgan calculated royalty payments. It may be that Plaintiffs can prove at trial that Kinder Morgan's payments were improper notwithstanding that the prices under non-qualified contracts were adequate. However, we agree with Kinder Morgan that Plaintiffs may indeed be challenging the prices under non-qualified contracts. It is simply not clear.
{25} Having concluded that nothing in the complaint clearly states whether the claims for violation of the Unfair Practices Act, fraud, and unjust enrichment are based on a dispute over non-qualified contract or transportation prices, we must now determine whether the district court erred by not sending these claims to arbitration. Applying principles of contract interpretation, we conclude that it would be inappropriate to compel arbitration when we have not been able to determine that Plaintiffs raised any claims covered by the arbitration clause. See AT & T Techs., Inc., 475 U.S. at 648, 106 S.Ct. 1415 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); cf. McMillan, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65 (noting that "New Mexico public policy favors freedom to contract" and that, therefore, the limitations in an arbitration clause "must be enforced" unless they violate law or public policy); Santa Fe Techs., Inc., 2002-NMCA-030, ¶ 55, 131 N.M. 772, 42 P.3d 1221 (noting that some arbitration clauses "are drafted with broad strokes and, as a result, require broad interpretation" but that even broad arbitration clauses may be limited in scope). The presumption in favor of arbitration cannot operate to compel arbitration of a particular claim in the absence of an agreement to arbitrate a particular claim. See Santa Fe Techs., Inc., 2002-NMCA-030, ¶ 52, 131 N.M. 772, 42 P.3d 1221 ("[T]he Court's inquiry is whether the parties have agreed to arbitrate the matter under dispute."); see also Cummings v. FedEx Ground Package Sys., Inc., 404 F.3d 1258, 1262 (10th Cir.2005) ("In construing the scope of a narrow arbitration clause, we must take care to carry out the specific and limited intent of parties."). Given the narrow scope of the arbitration agreement in this case, it is inappropriate to compel arbitration when Plaintiffs may not dispute the prices under non-qualified contracts at all.
CONCLUSION
{26} We emphasize that our decision is based on the lack of clarity in Plaintiffs' complaint and subsequent statements rather than on any perceived ambiguity in the arbitration agreement itself. We attempt to give effect to the intent of the parties as expressed in their agreement, but the structure of the arbitration clause necessitates careful consideration of the manner in which Plaintiffs structured their complaint. See Cont'l Potash, Inc., 115 N.M. at 704, 858 P.2d at 80. Plaintiffs have chosen to group the facts they allege at the beginning of their complaint and it is therefore impossible at this point to determine which facts they intend to prove to establish each claim. Because it is not clear *120 whether Plaintiffs challenge the prices under non-qualified contracts to support their claims for violation of the Unfair Practices Act, fraud, and unjust enrichment, the district court did not err in denying Kinder Morgan's motion to compel arbitration. As the case proceeds, it may become clear that prices of non-qualified contracts or transportation charges are issues with respect to the Unfair Practices Act, fraud, and/or unjust enrichment claims. If so, Plaintiffs must proceed with such claim or claims in arbitration. The district court is affirmed, with instruction to compel arbitration of Plaintiffs' claims for violation of the Unfair Practices Act, fraud, and unjust enrichment, rather than to allow any of these claims to go to trial, if the claims ultimately concern the prices of non-qualified contracts or transportation charges.
{27} IT IS SO ORDERED.
WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.