This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37540**

**LORETTA D. HARRISON and
WISDOMA LIFEWARRIOR, as
Co-Personal Representatives of
the WRONGFUL DEATH ESTATE
OF FANNIE DEAL, Deceased,**

   Plaintiffs-Appellees,

v.

**FARMINGTON OPERATIONS,
LLC d/b/a LIFE CARE CENTER
OF FARMINGTON; LIFE CARE
CENTERS OF AMERICA, INC.;
BRENDA CARLEY-DOSTALER,
Administrator; KORTNIE R. HARRIS,
Administrator; and JOHN DOES 1-250,**

   Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Daylene A. Marsh, District Judge**

Bossie, Reilly & Oh, P.C.
Donna Y. Oh
Mary Ellen Reilly
Phoenix, AZ

for Appellees

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Michelle A. Hernandez
Tomas J. Garcia
Albuquerque, NM

for Appellants

# MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Farmington Operations LLC, d/b/a Life Care Center of Farmington, Life Care Centers of America, Inc., Brenda-Carley-Dostaler, and Kortnie R. Harris (collectively, Defendants) appeal from the district court's order denying Defendants' motion to compel arbitration of claims brought by Loretta D. Harrison and Wisdoma Lifewarrior (Plaintiffs), daughters and co-personal representatives of the wrongful death estate of Fannie Deal (Decedent), following Decedent's death while in Defendants' care at a skilled nursing facility. On appeal, Defendants argue that the district court erred in concluding that (1) the power of attorney did not grant Lifewarrior authority to bind Decedent; (2) Defendants' reliance on the power of attorney was unreasonable; and (3) Lifewarrior was not authorized to act on Decedent's behalf under principles of agency law. We affirm.

## BACKGROUND

**{2}** Decedent was admitted to Life Care Center (The Facility) in May 2015 by her daughter, Lifewarrior, who signed the Admission Agreement as Decedent's legal representative. Two years earlier, Decedent had given Lifewarrior durable power of attorney (the POA) to act on her behalf for financial and healthcare decisions. The POA provides:

> My attorney-in-fact shall have the power to act in my name, place and stead in any way which I myself could do with respect to all matters to the extent permitted by law, including, by way of example and not by way of limitation.

Immediately following this language, the POA lists eighteen specific authorizations and in bold capital letters, instructed the principal to "INITIAL LINE OPPOSITE EACH AUTHORIZATION THAT YOU DESIRE TO GIVE YOUR DECISION-MAKER." Decedent's POA had check marks next to twelve of the eighteen categories, including "[b]usiness operating transactions[,]" "[e]state, trust, and other beneficiary transactions[,]" and "[d]ecisions relating to medical treatment, . . . nursing care, . . . institutionalization in a nursing home or other facility and home health care[.]" However, there is no check mark next to the category "[c]laims and litigation[.]" Moreover, instead of Decedent, Lifewarrior initialed the spaces stating that the POA is "effective immediately" as well as until death or revocation. Decedent, as the principal, signed the POA using her fingerprint at the end of the document.

**{3}** There is no indication in the record, and the parties have not argued, that Decedent was incapacitated or unable to understand and execute the admission agreement on her own behalf in 2015. Nevertheless, in this case Lifewarrior signed a resident admission agreement on her mother's behalf as her "legal representative." The resident admission agreement included three "facility inserts," or addendums, one of

which was a two-and-a-half page, prominently labeled, "Voluntary Agreement For Arbitration," (Arbitration Agreement) wherein a resident and/or her legal representative and Farmington Operations LLC, including The Facility, all agents, affiliates, and employees (effectively, all Defendants here) agreed "to arbitrate any dispute that might arise" between them. Decedent resided at the facility for eight months until her death in January 2016.

**Procedural History**

**{4}**     Plaintiffs filed a complaint in district court alleging that their mother died because of Defendants' inadequate care and treatment and raising claims for wrongful death, negligence, negligence per se, negligent or intentional misrepresentations, violations of the New Mexico Unfair Trade Practices Act (UPA), and punitive damages. Approximately four months later, one of the Defendants, Life Care Centers of America, a Tennessee corporation, filed a separate action in the United States District Court for the District of New Mexico (the federal court action) to compel arbitration. Defendants filed a motion for protective order and motion to stay the state proceedings pending resolution of the federal court action, or in the alternative to request that the district court compel arbitration. The district court denied the motion to compel arbitration without prejudice, concluding that the POA did not grant Lifewarrior the authority to enter into the arbitration agreement on her mother's behalf and noting if the federal court compels arbitration as to the single Defendant, a schedule for briefing and a hearing will be set to consider the impact of the decision. Defendants appeal.

**{5}**     In their reply brief to this Court, Defendants stated that during the pendency of this appeal the federal district court granted Life Care Centers of America's motion to compel arbitration, concluding that Decedent was a third-party beneficiary of a contract and is bound by the contract. *Life Care Ctrs. of Am., Inc. v. Estate of Deal*, No. 18-CV-187-MV, 2019 WL 1283006, at *6 (D.N.M. Mar. 2019). Subsequently, this Court ordered the parties to each submit a report describing the status of the arbitration ordered by the federal court and whether remand to the district court is appropriate in this case. Plaintiffs notified the Court that the parties have not commenced arbitration, that Defendants have declined to participate in discovery pending this appeal, and that Defendants did not file a notice in district court of the outcome of the federal court action. Defendants report that they notified this Court of the outcome of the federal court action, that Plaintiffs have not complied with or appealed the federal court's order granting the motion to compel arbitration as to Defendant Life Care Centers of America, and that remand would be unnecessary since this case is an appeal of a district court's order denying arbitration. We proceed in evaluating the district court's order denying Defendants' motion to compel arbitration.

**DISCUSSION**

**{6}**     The issue remains whether the district court erred in denying Defendants' motion to compel arbitration. Defendants argue that the district court erred in concluding that (1) the POA did not grant Lifewarrior authority to bind Decedent; (2) Defendants'

reliance on the POA was unreasonable; and (3) Lifewarrior was not authorized to act on Decedent's behalf under principles of agency law. We review a district court's denial of a motion to compel arbitration de novo, *Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218; *see Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 13, 150 N.M. 669, 265 P.3d 720 (explaining that where the material facts are undisputed, the existence of an agency relationship is reviewed de novo). Our review of the record reveals that the district court did not err in concluding that the POA did not authorize Lifewarrior to agree to arbitration as part of the admissions process because Decedent specifically withheld such authority as pertains to "claims and litigation." We explain.

**{7}** "The New Mexico Supreme Court has repeatedly reaffirmed the [state's] strong public policy . . . in favor of resolution of disputes through arbitration." *Id.* ¶ 14 (internal quotation marks and citation omitted); *see* New Mexico Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001). Our state's policy aligns with the federal policy favoring arbitration under the Federal Arbitration Act (the FAA). *See* 9 U.S.C. §§ 1-16 (2018). State courts may not treat arbitration provisions differently compared to other contract provisions. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) ("What [s]tates may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The [FAA] makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the [FAA]'s language and Congress' intent."). "Congress did not, however, intend the FAA to entirely displace state law governing contract formation and enforcement. . . . Courts may invalidate arbitration agreements through the application of generally applicable contract defenses, such as fraud, duress, or unconscionability, without violating the FAA." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 52, 304 P.3d 409 (internal quotation marks and citations omitted).

**{8}** Since Lifewarrior acted as Decedent's agent in signing the admissions agreement and the voluntary arbitration agreement, we also consider New Mexico's agency law. "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair, or does some service for the principal, with or without compensation." *Barron*, 2011-NMCA-094, ¶ 16 (alteration, internal quotation marks, and citation omitted). Actual authority arises from the principal's express terms or in terms that are "implied from words or conduct of the principal to the agent or from the circumstances of the relationship." *Id.* Conversely, apparent authority arises from "manifestations by the principal to the third party and can be created by appointing a person to a position that carries with it generally recognized duties." *Id.* (internal quotation marks and citation omitted). A principal is bound by the acts of his or her agent whether acting with actual or apparent authority. *Id.* Specifically, "in considering the scope of an agent's apparent authority, New Mexico courts look to the reasonableness of the third party's reliance on the agent's representation of authority." *Id.*

## I. The District Court Did Not Err in Denying Defendants' Motion to Compel Arbitration

**{9}** The district court concluded that the arbitration agreement was unenforceable because Lifewarrior's authority under the POA was limited, specifically withholding any authority as pertains to "claims and litigation," and thus, Lifewarrior was not authorized to enter into the arbitration agreement. The district court further noted that any apparent authority exercised by Lifewarrior stemmed exclusively from Decedent's representations in the POA. Accordingly, the district court determined that Defendants' reliance on the POA was unreasonable because Defendants did not exercise reasonable diligence to ascertain the scope of Lifewarrior's authority under the POA. We agree.

**{10}** Under New Mexico's agency law, actual and apparent authority stem primarily from the principal's representations. *See id.*, ¶ 16 (explaining that actual authority arises from the principal's express terms or terms "implied from words or conduct *of the principal* to the agent or from the circumstances of the relationship" and that apparent authority arises from "manifestations *by the principal* to the third party" (emphasis added) (internal quotation marks and citation omitted)). In this case, Decedent's *only* representation to Defendants was her POA, and thus, any authority Decedent granted to Lifewarrior stemmed exclusively therefrom. In that POA, Decedent limited the scope of her daughter's authority by not initialing or checking off the authorization for "claims and litigation"—a term of art that our Legislature has plainly defined in New Mexico's Uniform Power of Attorney Act (UPAA) as "submit[ting] to alternative dispute resolution" such as arbitration. NMSA 1978, § 45-5B-212(E) (2011) (defining claims and litigation in the UPAA to include submitting to "alternative dispute resolution, settle and propose or accept a compromise"). Given this express definition, and that there were no representations by the principal other than that expressed within the POA itself, Decedent's deliberate choice to withhold authority as to "claims and litigation" demonstrates that Lifewarrior had no authority—actual or apparent—to enter into the voluntary arbitration agreement on Decedent's behalf. And because this limitation was apparent from the face of the POA, Defendants' reliance on the POA for such authority was unreasonable. *See Comstock v. Mitchell*, 1990-NMSC-054, ¶ 4, 110 N.M. 131, 793 P.2d 261 ("Clearly, a limitation by the principal of the agent's authority, *communicated to a third party,* is effective to excuse the principal from liability to that third party for acts by the agent in excess of the limit prescribed; and a person dealing with an agent must use reasonable diligence and prudence to ascertain whether the agent is acting within the scope of his powers."); *Barron*, 2011-NMCA-094, ¶ 16 (stating that New Mexico courts look to the reasonableness of the third party's reliance on the agent's representation of authority).

**{11}** Defendants contend that the district court narrowly construed the POA and that the language preceding the list of eighteen authorizations granted broad authority to Lifewarrior, including the authority to agree to arbitration. We disagree. In pertinent part, the POA provides:

> My attorney-in-fact shall have the power to act in my name, place and stead *in any way* which I myself could do *with respect to all matters* to the extent permitted by law, including, by way of example and not by way of limitation.

(Emphasis added.) The district court considered this language and concluded that the "POA, taken as a whole, was not a general POA granting broad authority to Lifewarrior in 'all matters.'" Instead, the POA, as its title denotes, was specifically limited to "financial and healthcare decision making." Moreover, immediately following the language Defendants point out as granting broad authority, and preceding the list of eighteen authorizations, were instructions in bold capital letters to the principal to: "INITIAL LINE OPPOSITE EACH AUTHORIZATION THAT YOU DESIRE TO GIVE YOUR DECISION-MAKER." The district court aptly concluded that while the list of eighteen choices was not an all-inclusive list, and that the principal could choose to add categories to those listed in the POA, such did not change "the character of the entire POA into one granting Lifewarrior unlimited authority."

**{12}** Furthermore, we cannot conclude there to be broad authority over a subject matter that a principal specifically chose not to select in the POA. Here, Decedent granted Lifewarrior authorization in her POA by checking the line next to twelve of the eighteen categories, but withheld authorization as to "claims and litigation." To expand the scope of Lifewarrior's authority beyond the categories that Decedent elected to check off, and in particular, to subject matter where authorization was specifically withheld, would render the enumerated list of categories and instruction about initialing next to each category "meaningless surplusage," as the district court noted, significantly undermining a principal's choice to craft the scope of her agent's authority by including some categories and excluding others, consistent with the UPAA. *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 67, 299 P.3d 844 ("When a contract is clear as written, a court must give effect to the contract and enforce it as written. Courts cannot create a new agreement for the parties . . . and will not give effect to a party's undisclosed intentions." (internal quotation marks and citations omitted)); *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 10, 140 N.M. 552, 144 P.3d 111 ("We will not read language into a contract that is not there, but neither will we construe any clause so as to render it meaningless.").

**{13}** Defendants also rely heavily on *Barron* for the proposition that the authority to admit a principal to a nursing home through a health care power of attorney also encompasses the authority to enter into an arbitration agreement. *See* 2011-NMCA-094, ¶ 30 ("Thus, regardless of whether an agent's authority to admit a principal to a nursing home is granted through a healthcare power of attorney . . . or is orally granted, as in the present case, once granted, the authority encompasses arbitration agreement decisions."). We decline to extend the holding in *Barron* as applicable in this case and note two key points of distinction.

**{14}** First, in *Barron*, the principal granted her agent an unlimited grant of authority through both a verbal authorization to the defendants that her agent would handle all

the admission paperwork as well as a healthcare power of attorney. *See id.* ¶¶ 24-28. There, this Court emphasized that the principal did not place *any* limitation on her agent's authority to complete the admission paperwork. *See id.* ¶¶ 24-25 (stating twice that the principal's designation of authority to her agent was "unlimited" and describing agent's authority as a "broad grant of authority to [her agent] to complete the admission paperwork"); *id.* ¶ 28 ("No limitation of any sort on [the agent's] authority was ever communicated to [the nursing home's employee.]")*.* On the other hand, in this case, there is no broad grant of authority, and we rely solely on Decedent's POA to ascertain the scope of authority granted to Lifewarrior. Second, in *Barron*, the principal did not expressly decline to grant her agent the authority to make decisions about "claims and litigation." Conversely, here, Decedent unambiguously limited Lifewarrior's authority to certain enumerated categories and declined to grant authority about "claims and litigation" which includes the authority to enter into arbitration agreements pursuant to Section 45-5B-212(E).

**{15}** We note that generally, "an agent's authority to bind a principal to arbitration does not have to be specifically or separately granted." *Barron*, 2011-NMCA-094, ¶ 26 (stating that "an agent with authority to complete the documents for admission is likewise permitted to decide on behalf of the principal whether future disputes with the facility should be arbitrated or litigated"). However, when a principal expressly withholds authority, such as regarding claims and litigation, we will not override the principal's choice to limit her agent's authority to the extent she deems appropriate. *See Comstock*, 1990-NMSC-054, ¶ 4 ("It is always competent for a principal to limit the authority of his [or her] agent, and if such limitations have been brought to the attention of the party with whom the agent is dealing, the power to bind the principal is defined thereby. Clearly, a limitation by the principal of the agent's authority, communicated to a third party, is effective to excuse the principal from liability to that third party for acts by the agent in excess of the limit prescribed; and a person dealing with an agent must use reasonable diligence and prudence to ascertain whether the agent is acting within the scope of his [or her] powers." (emphasis, internal quotation marks, and citation omitted)).

**{16}** Finally, to the extent Defendants argue that the district court placed arbitration on unequal footing by treating certain contractual choices made by Lifewarrior as enforceable while treating her choices regarding arbitration as unenforceable, we find the argument to be unavailing. The district court here, using generally applicable principles of state contract law and agency law, evaluated the particular POA at issue and the threshold question of whether Lifewarrior had the authority to enter into the arbitration agreement. As we already held, she did not.

**{17}** Moreover, as the district court observed, Defendants failed to exercise reasonable diligence and prudence to ascertain that Lifewarrior acted outside the scope of her authority under the POA by signing the agreement to arbitrate. As our Supreme Court noted in *Comstock*, the relevant inquiry is whether Defendants knew or should have known of the limitation, and in particular, whether they used "reasonable diligence and prudence to ascertain whether the agent is acting within the scope of [her] powers."

*Id.* ¶ 4 (internal quotation marks and citation omitted). A cursory review of the POA by Defendants at the time of admission would have revealed Lifewarrior's limited authority, since nine of eighteen categories of financial and healthcare decisions in the POA were left unchecked. In addition, other irregularities on the face of the document should have signaled Defendants to closely review the POA, including Decedent's failure to follow the document's instructions by using check marks instead of initials to mark the enumerated authorizations, the fact that Lifewarrior's initials appear elsewhere where Decedent's initials should have been, and that Decedent signed the POA using a thumbprint. We conclude that had Defendants been reasonably diligent in reviewing the POA, they should have known of the limited scope of Lifewarrior's authority. *See id.* Given Lifewarrior's lack of actual or apparent authority to agree to arbitration on Decedent's behalf as well as Defendant's unreasonable reliance on the POA to grant such authority, we conclude that the arbitration agreement is unenforceable against Decedent's estate. *See Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 19, 149 N.M. 681, 254 P.3d 124 (observing that the United States Supreme Court has established a rule of severability where "an arbitration provision is severable from the remainder of the contract"); *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 8, 134 N.M. 558, 80 P.3d 495 (holding that a legally enforceable agreement to arbitrate is a prerequisite to arbitration and without such agreement, parties will not be forced to arbitrate); 3 Am. Jur. 2d *Agency* § 77 (2020) (stating that a contract beyond the scope of an agent's authority "as thus limited or restricted, is not binding on the principal").

**CONCLUSION**

**{18}** For these reasons set forth above, we affirm the district court order.

**{19}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**