This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40583

**SHARLEEN PFEIFFER-ANDERSON,
Personal Representative of the Probate
Estate of B.P., Deceased,**

Plaintiff-Appellee,

v.

**THE EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY d/b/a GOOD
SAMARITAN SOCIETY -- MANZANO
DEL SOL VILLAGE; SANFORD HEALTH
FOUNDATION; LISA MEYER, Administrator;
and GAYLENE MONTEZ, Director of Nursing,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Joshua A. Allison, District Court Judge**

Harvey and Foote Law Firm, LLC
Jennifer J. Foote
Dusti Harvey
Albuquerque, NM

for Appellee

Miller Stratvert P.A.
Thomas R. Mack
Samantha E. Kelly
Albuquerque, NM

Fudge Broadwater P.A.
Donna J. Fudge
Keith M. Hoffman
St. Petersburg, FL

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}** Defendants Evangelical Lutheran Good Samaritan Society (Evangelical Lutheran), Sanford Health Foundation, Lisa Meyer, and Gaylene Montez appeal the district court's order that granted in part and denied in part Defendants' motion to compel arbitration. Defendants argue that the district court erred in determining that Plaintiff Sharleen Pfeiffer-Anderson, the personal representative of the estate of B.P., specifically challenged the arbitrability provision in their arbitration agreement, and that Plaintiff's common law sexual assault claims are not subject to arbitration. We affirm.

**BACKGROUND**

**{2}** This case arises from a claim for personal injuries filed by B.P.'s estate against a nursing home operated by Evangelical Lutheran. According to the first amended complaint, B.P. was a resident at the nursing home for eight years. Toward the end of her stay, B.P. suffered a fall and was a victim of a sexual assault perpetrated by another resident of the facility. The first amended complaint alleged that both incidents occurred because of the nursing home's negligent failure to follow and comply with applicable standards of care for nursing homes.

**{3}** As part of B.P.'s admission paperwork to the nursing home, Plaintiff, as the lawful agent for B.P., entered into an agreement titled, "Resolution of Legal Disputes" (the Arbitration Agreement) on B.P.'s behalf. B.P. passed away and Plaintiff, in her capacity as the personal representative of B.P.'s estate, filed suit on behalf of the estate. Defendants moved to stay the action and compel arbitration based on the Arbitration Agreement. Defendants further argued that the Arbitration Agreement contained an arbitrability provision that delegated gateway issues of arbitrability to an arbitrator. Plaintiff responded arguing that the Arbitration Agreement was unenforceable because it was substantively and procedurally unconscionable. Plaintiff's response stated that she "specifically challenges the 'delegation clause' on the same basis that she challenges the broader arbitration clause, as the procedurally unconscionable circumstances surrounding its signing . . . render it unenforceable." She also argued that her claims regarding sexual assault were not within the scope of the Arbitration Agreement.

**{4}** After reviewing the parties' briefing and holding a hearing, the district court granted in part and denied in part Defendants' motion. The district court determined that Plaintiff's procedural unconscionability arguments were sufficiently specific to attack the arbitrability provision. The district court then determined that the sexual assault claim

was not arbitrable.[1] Finally, it declined to stay the matter regarding the nonarbitrable claim. Defendant appeals.

## DISCUSSION

### I.      Plaintiff Specifically Challenged the Arbitrability Provision

**{5}**      "Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law." *Hunt v. Rio at Rust Ctr.*, LLC, 2021-NMCA-043, ¶ 12, 495 P.3d 634 (internal quotation marks and citation omitted). "Accordingly, we apply New Mexico contract law in the interpretation and construction of the arbitration agreement." *Id.* (alterations, internal quotation marks, and citation omitted). We address Defendants' arguments, applying a de novo standard of review. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901 ("We apply a de novo standard of review to a district court's denial of a motion to compel arbitration. Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." (internal quotation marks and citations omitted)).

**{6}**      "[G]ateway questions of arbitrability typically involve matters of a kind that contracting parties would likely have expected a court to decide, such as the validity of an arbitration provision, the scope of an arbitration provision, or whether an arbitration agreement covers a particular controversy." *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 124 (alteration, internal quotation marks, and citation omitted), *aff'd on other grounds*, Nos. 33,011, 33,013, dec. (N.M. Aug. 23, 2012) (nonprecedential). "The general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is clear and unmistakable evidence that the parties decided otherwise under the terms of their arbitration agreement." *Hunt*, 2021-NMCA-043, ¶ 13 (emphasis, internal quotation marks, and citation omitted). Nevertheless, "even if there is a clear and unmistakable intent to arbitrate, a court may still consider a challenge to the delegation clause in an arbitration agreement" if a party "specifically challenge[s] the delegation provision." *Juarez v. Thi of N.M. at Sunset Villa, LLC*, 2022-NMCA-056, ¶ 22, 517 P.3d 918 (internal quotation marks omitted); *see id.* (determining that a district court must consider "(1) [W]as there a clear and unmistakable agreement to arbitrate arbitrability? and (2) did the challenger mount a 'specific challenge' to that agreement" to determine gateway questions of arbitrability? (alterations, internal quotation marks, and citation omitted)).

**{7}**      Because the parties agree there was a clear and unmistakable agreement to arbitrate gateway issues of arbitrability, we turn to whether the district court erred in determining Plaintiff mounted a specific challenge to the arbitrability provision.

---

[1]Defendants note that the district court incorrectly referred to the alleged "sexual battery claims." Plaintiff's first amended complaint referenced a sexual assault. We ignore the mistake as a simple typographical error. *See Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 31, 132 N.M. 459, 50 P.3d 554.

**{8}**    Plaintiff sufficiently challenged the delegation provision in the Arbitration Agreement. In Plaintiff's response to Defendants motion to compel arbitration, she argued that the Arbitration Agreement was both substantively and procedurally unconscionable. Plaintiff argued it was substantively unconscionable because it does not meet federal regulations regarding nursing homes and arbitration, and that "the arbitration clause requires the parties to share the cost of arbitration." Plaintiff argued that it was procedurally unconscionable because the circumstances surrounding her signing the Arbitration Agreement demonstrated that she did not have a real choice in signing the Arbitration Agreement. For example, Plaintiff was worried about her mother and concerned that if she did not sign the documents they would not admit her mother; she did not understand the terms of the Arbitration Agreement; the employees did not review the paperwork with her or offer her time to review it; and Plaintiff was unfamiliar with arbitration. This argument was based on Plaintiff's affidavit where she also stated, "I would have never signed this [A]rbitration [A]greement had I known it would mean that it would cost so much money to have this case heard, that it would mean we couldn't go to court, or that it would have included something as terrible as the rape of my mother." Plaintiff also asserted that she "specifically challenges the 'delegation clause' on the same basis that she challenges the broader arbitration clause, as the procedurally unconscionable circumstances surrounding its signing were the same as outlined in her attached affidavit, and equally render it unenforceable."

**{9}**    We agree with the district court that Plaintiff sufficiently challenged the delegation provision to the Arbitration Agreement based on her failure to comprehend arbitration and her statements that she would not have agreed to arbitration had she known how expensive the proceedings would be. Plaintiff further stated that she would not have agreed to arbitration disputes concerning the sexual assault of her mother. The circumstances here are similar to those in *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 13, 288 P.3d 888, wherein the plaintiff argued there was fraud in the inducement based on alleged misrepresentation by the lender of neutrality of the two organizations identified to administer the arbitration proceedings and the fact that the two organizations had stopped administering arbitration of collections. It is also similar to *Felts*, wherein the plaintiff's arguments that class action ban rendered both the arbitration agreement and the delegation clause unconscionable and that the company selected to perform the arbitration had ceased its consumer arbitration business were sufficient to specifically challenge the arbitrability provision. 2011-NMCA-062, ¶ 30.

**{10}**    *Juarez* is not controlling on our inquiry because there the plaintiff argued the arbitration agreement was procedurally unconscionable based on her affidavit stating, "[The p]laintiff did not read the paperwork, was not asked to review the paperwork, felt as if she had no choice but to sign, and was on medication at the time of signing." 2022-NMCA-056, ¶ 7. She then stated, "[The p]laintiff also challenges this 'delegation clause' under the same grounds she challenges the 'Agreement.'" *Id.* (internal quotation marks omitted). This Court determined that the plaintiff did not sufficiently challenge the delegation provision because the delegation clause itself was not attacked. *Id.* ¶¶ 37, 38. Again, *Juarez* is distinct from this case in which Plaintiff specifically argued about

the unconscionability of the cost of arbitration and arbitrating claims regarding the sexual assault of B.P.

## II. Plaintiff's Claims Related to the Sexual Assault of B.P. Are Not Within the Scope of the Arbitration Agreement

**{11}** Defendants next argue that the district court erred in concluding the Arbitration Agreement did not include Plaintiff's claims regarding the sexual assault of B.P. The issue on appeal centers on whether Plaintiff's claim related to the sexual assault of B.P. is subject to the Arbitration Agreement. A court cannot compel arbitration in the absence of an enforceable agreement to arbitrate. *Alexander v. Calton & Assocs., Inc.*, 2005-NMCA-034, ¶ 9, 137 N.M. 293, 110 P.3d 509. We decide this issue as a matter of contract. *See Clay*, 2012-NMCA-102, ¶ 14 ("[The general] rule is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (internal quotation marks and citation omitted)). In doing so, we seek to fulfill the intent of the parties and look to the plain meaning of the contractual language when possible. *Id.* ¶¶ 14, 20; *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 52, 131 N.M. 772, 42 P.3d 1221. We review de novo the district court's denial of the motion to compel arbitration on Plaintiff's claims based on the sexual assault of B.P. *See Cordova*, 2009-NMSC-021, ¶ 11.

**{12}** "We construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it." *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 14, 134 N.M. 558, 80 P.3d 495. Arbitration clauses drafted with broad strokes require broad interpretation. *Santa Fe Technologies, Inc.*, 2002-NMCA-030, ¶ 55. "When parties voluntarily contract to arbitrate their grievances, an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 46, 296 P.3d 478 (alteration, internal quotation marks, and citation omitted); *see Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 7, 140 N.M. 552, 144 P.3d 111 ("[A]mbiguity in arbitration clauses should be resolved to favor arbitration.").

**{13}** Despite these canons of construction, our prior cases dealing with broadly worded arbitration clauses have required some relationship between the dispute at issue and the general substance of the underlying agreement. *See Clay*, 2012-NMCA-102, ¶ 14 ("In order to fall within the scope of the arbitration clause, the claims at issue must bear a 'reasonable relationship' to the contract in which the arbitration clause is found." (citation omitted)); *Santa Fe Technologies, Inc.*, 2002-NMCA-030, ¶ 52. Although the arbitration provision we examined in *Clay*—by its terms—applied only to matters that arose from or were related to the underlying agreement, we were nonetheless persuaded that "even the most broadly[] worded arbitration agreements still have limits founded in general principles of contract law," and that courts should "refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." 2012-NMCA-102, ¶¶ 18, 22-23 (internal quotation marks and citation omitted). Thus, a

party to even the most general arbitration agreement "may be assumed to have intended to arbitrate issues that are closely related to those governed by the agreement itself, but not those that are unrelated to the agreement, out of the context of the agreement, or outrageous and unforeseeable." *Id.* ¶ 20.

**{14}** Plaintiff made a claim of negligence against Defendants that included B.P. suffering injuries and harm based on the "sexual assault by a male resident." The list of claims covered by the Arbitration Agreement is as follows:

> A. Resident's Rights. *Any legal controversy, dispute, disagreement or claim arising between the Parties* hereto after the execution of this Admission Agreement in which Resident, or a person acting on his or her behalf, *alleges a violation of any right granted Resident under law or contract shall be settled exclusively by binding arbitration* as set forth in Section C. below. This provision shall not limit in any way the Resident's right to file formal or informal grievances with the Facility or the state or federal government.

> B. All Other Disputes. *Any, legal controversy, dispute, disagreement or claim of any kind arising out of, or related to this Admission Agreement, or the breach thereof, or, related to the care of stay at the Facility, shall be settled exclusively by binding arbitration* as set forth in [S]ection C. below. *This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims and all allegations of fraud concerning entering into or canceling this Admission Agreement.* This arbitration provision binds all parties whose claims may arise out of or relate to treatment or service provided by the center including any spouse or heirs of the Resident.

There is no question that the parties had a valid, enforceable arbitration clause that was broad in scope and contained in the Arbitration Agreement. As we noted above, although a broad arbitration clause requires a broad interpretation as to its scope, "the claims at issue must bear a 'reasonable relationship' to the contract in which the arbitration clause is found." *Id.* ¶ 14; *Santa Fe Technologies, Inc.*, 2002-NMCA-030, ¶¶ 52, 55. "A party may be assumed to have intended to arbitrate issues that are closely related to those governed by the agreement itself, but not those that are unrelated to the agreement, out of the context of the agreement, or outrageous and unforeseeable." *Clay*, 2012-NMCA-102, ¶ 20.

**{15}** We agree with the district court that "even if B.P. agreed to arbitrate certain claims concerning her residency and care, it is not reasonable . . . to conclude that she intended to give up a right to a jury trial concerning her alleged sexual assault by another resident. To do so would be contrary to the parties' intentions and would allow the arbitration of unforeseeable events." *See Castillo v. Arrieta*, 2016-NMCA-040, ¶ 12, 368 P.3d 1249 (noting with approval a Tenth Circuit opinion stating that if "two small

business owners execute a sales contract including a general arbitration clause, and one assaults the other, it is elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract" (alterations, internal quotation marks, and citation omitted)).

**{16}**    Defendants attempt to differentiate the facts here from *Clay* because the agreement at issue in that case "did not expressly include torts, and the question became whether such torts 'arise from or relate to' the parties' agreement." The agreement in *Clay* did in fact include "disputes based upon contract, tort, consumer rights, fraud and other intentional torts." 2012-NMCA-102, ¶ 17 (emphasis, internal quotation marks, and citation omitted). Thus, the Arbitration Agreement's inclusion of language relating to torts is not dispositive on the issue. Defendants also argue that the "arising out of or relating to" language included in the arbitration agreement in the *Clay* matter is also different than the language in the Arbitration Agreement. Again, the difference is not dispositive because we stated that "even the most broadly[] worded arbitration agreements still have limits founded in general principles of contract law," and that courts should "refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings." *Clay*, 2012-NMCA-102, ¶¶ 18, 22-23 (internal quotation marks and citation omitted). We therefore conclude that the Arbitration Agreement's arbitration requirement does not apply to Plaintiff's claims relating to the sexual assault of B.P.

**CONCLUSION**

**{17}**    For the reasons stated herein, we affirm the district court.

**{18}    IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**

**retired, Sitting by designation**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KRISTINA BOGARDUS, Judge**